2019 PA Super 208

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| DAVID PACHECO, | : : | |
| Appellant | | No. 151 EDA 2018 |

Appeal from the Judgment of Sentence, November 29, 2017,
in the Court of Common Pleas of Montgomery County,
Criminal Division at No(s):  CP-46-CR-0002243-2016.

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

OPINION BY KUNSELMAN, J.:                    **FILED JULY 03, 2019**

David Pacheco appeals from the aggregate judgment of sentence imposed following his conviction of multiple counts of possession with intent to deliver ("PWID")[1] and related offenses.  We vacate the judgment of sentence, reverse the order denying suppression as it relates to real-time cell site location information ("CSLI") evidence, and remand for further proceedings.

In April 2015, a heroin trafficking investigation initiated by the Montgomery County District Attorney's Office, Narcotics Enforcement Team, uncovered a large criminal conspiracy.  The District Attorney's Office learned

_____

[1] 35 P.S. § 780-113(a)(30).

_____

*   Retired Senior Judge assigned to the Superior Court.

that a Mexican drug trafficking organization was smuggling heroin into the United States, and Pacheco, a Norristown, Pennsylvania, resident, was picking up the heroin in Atlanta, Georgia, and then transporting it to wholesale heroin buyers in New York City, New York.

On July 23, 2015, Montgomery County prosecutors applied for and obtained orders from the Montgomery County Court of Common Pleas pursuant to Subchapter C[2] of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("the Wiretap Act"). The orders compelled wireless service providers to provide to prosecutors records for three cellular telephones suspected to be linked to Pacheco. The service records from the wireless service providers revealed that one of the phones was registered to Pacheco.

One month later, on August 28, 2015, Montgomery County prosecutors sought and obtained additional orders from the Montgomery County Court of Common Pleas under Subchapter E,[3] of the Wiretap Act. The orders, which were issued pursuant to 18 Pa.C.S. § 5773, authorized prosecutors to obtain information relating to Pacheco's cell phone number and the numbers for other cell phone believed to be used by him. Pursuant to those orders, prosecutors obtained call detail records for the prior thirty days. Additionally, the orders

---

[2] 18 Pa.C.S. §§ 5741-5749.

[3] 18 Pa.C.S. §§ 5771-5775.

allowed prosecutors to obtain mobile communication tracking information,[4] install and use pen registers, trap and trace devices, and telecommunications identification interception devices for a prospective period of sixty days. On October 15, 2015, the court issued an order permitting usage of the various electronic surveillance and tracking methods for an additional sixty days, for a total tracking period of 120 days.

On December 11, 2015, and January 6, 2016, Montgomery County prosecutors sought and obtained orders from the Superior Court pursuant to Subchapter B[5] of the Wiretap Act, authorizing them to intercept oral, electronic and wire communications for the cell phone registered to Pacheco, as well as three others believed to be used by him.

---

[4] "Mobile communications tracking information" is defined by the Wiretap Act as "[i]nformation generated by a communication common carrier or a communication service which indicates the location of an electronic device supported by the communication common carrier or communication service." 18 Pa.C.S. § 5702. The mobile communications tracking information at issue in this case is CSLI, which is obtained and routinely collected by wireless service providers each time a cell phone connects to a cell site. When law enforcement seek an order requiring a wireless service provider to disclose CSLI data that it has collected through a cell phone's normal interaction with cell sites, that information is referred to as "historical CSLI." In contrast, as occurred in this case, "real-time CSLI" is obtained when the service provider, at the direction of law enforcement, actively sends signals to the cell phone, causing it to transmit its location back to the wireless service provider, which then provides law enforcement with a real-time record of the location of those connections.

[5] 18 Pa.C.S. §§ 5703-5728.

Prosecutors and detectives analyzed the information they obtained through pen registers, trap and trace devices, call detail records, wire interceptions, physical surveillance and real-time CSLI tracking. They identified multiple occasions between September 2015 and January 2016 when Pacheco traveled to Atlanta and New York as a member of the Mexican drug trafficking organization. On each trip, Pacheco obtained a car battery containing three kilograms of heroin in Atlanta, returned briefly to Norristown, and then transported the heroin to New York, using his cell phone to facilitate the transactions.

By monitoring intercepted telephone calls, detectives learned that, on January 10, 2016, Pacheco planned to drive from Georgia back through Norristown with a retrofitted car battery containing three kilograms of heroin. Police assembled a surveillance team along Pacheco's anticipated route, and apprehended him in Montgomery County. A lawful search of his vehicle revealed three kilograms of heroin hidden in the car's battery.[6]

Police arrested Pacheco and charged him with nine counts each of PWID and criminal use of a communications facility, two counts of dealing in unlawful proceeds, and one count each of conspiracy to commit PWID and corrupt

---

[6] The amount of heroin seized from one car battery is equivalent to approximately one hundred thousand single-dose bags. *See* Trial Court Opinion, 3/9/18, at 4 (citing N.T. Trial, 8/9/17, at 88).

organizations.[7] Pacheco moved to suppress the call detail records, the real-time CSLI evidence, and evidence collected from telecommunications identification interception devices. Following a suppression hearing and supplemental briefing, the trial court denied suppression.

The case proceeded to a jury trial beginning on August 7, 2017. Pacheco stipulated that he transported three kilograms of heroin on seven of the nine trips detected by law enforcement. He also admitted on direct examination that he "did the things that police say [he] did." N.T. Trial, 8/9/17, at 131. However, Pacheco raised the defense of duress; he claimed that he was coerced by Mexican drug cartels to act as a drug courier; if he did not comply, the cartels threatened that they would kill his family members.

At the conclusion of trial, the jury convicted Pacheco of all charges except corrupt organizations. On November 29, 2017, the trial court sentenced him to an aggregate prison term of forty to eighty years, followed by ten years of probation.[8] Pacheco timely filed post-sentence motions, which

_____

[7] **See** 35 P.S. §780-11(a)(30), 18 Pa.C.S. § 7512, 18 Pa.C.S. § 5111, 18 Pa.C.S. § 903, 18 Pa.C.S. § 911.

[8] The trial court sentenced Pacheco to serve consecutive prison sentences of five to ten years on seven counts of PWID; concurrent prison sentences of five to ten years on the remaining two counts of PWID; a consecutive prison sentence of three to six years for conspiracy to commit PWID; consecutive prison terms of one to two years for each of the two counts of dealing in proceeds of unlawful activity; five years of probation on two counts of criminal use of a communications facility, consecutive to each other and to the period of incarceration; and five years of concurrent probation for each of the

the trial court denied on December 12, 2017. He then filed a timely notice of appeal. Pacheco and the trial court complied with Pa.R.A.P. 1925.

Pacheco raises the following four issues for our review, which we have reordered for ease of disposition:

I.      Whether [Pacheco] waived [his challenge to the denial of suppression of the real-time CSLI evidence] when it was clearly set forth in his [Rule] 1925(b) statement?

II.     Whether the trial court erred in denying the motion to suppress evidence where the Commonwealth illegally tracked [Pacheco's] cell phone(s) in violation of the Pennsylvania Constitution, the Fourth Amendment, the Pennsylvania Wiretap Act and the recent decision in *Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018).[9]

III.    Whether the trial court erred by denying the right to present a Mexican drug cartel expert whose testimony would have supported the duress defense presented at trial?

IV.     Whether the trial court abused its discretion by imposing a manifestly unreasonable, excessive aggregate sentence of forty (40) to eighty (80) years of imprisonment, which was a virtual life sentence, without giving adequate reasons for that sentence while relying on improper considerations?

Appellant's Brief at 5 (footnote added).

_____

remaining seven counts of criminal use of a communications facility. All of the sentences fall within the standard range of the sentencing guidelines.

[9] In *Carpenter*, the United States Supreme Court held that when the government accesses historical CSLI during the course of a criminal investigation, it constitutes a search under the Fourth Amendment, necessitating a warrant supported by probable cause.

Initially, we must address whether Pacheco sufficiently preserved his constitutional challenge to the trial court's order denying suppression of the real-time CSLI evidence.[10]  In its Pa.R.A.P. 1925(a) opinion, the trial court concluded that the issue was waived because it was stated too vaguely in Pacheco's concise statement.  Pacheco framed this issue as follows:

> Whether the trial court erred in failing to suppress all evidence derived from the warrantless real-time tracking of [his] cell phone where such evidence was obtained in violation of the Pennsylvania Wiretap Act, Article I, Section 8 of the Pennsylvania Constitution, and the Fourth and Fourteenth Amendment of the United States Constitution?

Concise Statement, 1/31/18, at 1.

Pennsylvania Rule of Appellate Procedure 1925 requires an appellant "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues." Pa.R.A.P. 1925(b)(4)(ii). This Court has considered the question of what constitutes a sufficient 1925(b) statement on many occasions.  It is well-established that an appellant must properly specify in his concise statement the error to be addressed on appeal. *See Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011).

_____

[10] Although numerous orders were issued to law enforcement during the course of the investigation, Pacheco challenges only the orders issued pursuant to 18 Pa.C.S. § 5773, Subchapter E, of the Wiretap Act.  Moreover, while those orders authorized several types of electronic surveillance, Pacheco's present challenge is limited to the portions of those orders which authorized the real-time CSLI tracking of his cell phone.

According to the trial court, because prosecutors obtained multiple court orders authorizing various searches, "it is unclear what evidence was obtained without a [c]ourt order or warrant." Trial Court Opinion, 3/9/18, at 7. The trial court further points to the language of section 5773 of the Wiretap Act, and notes that it "specifically requires court orders instead of warrants." **Id**. at 8.

The Commonwealth also argues that Pacheco waived the claim, albeit on a different basis; namely, that he did not raise a **Carpenter** issue before the trial court. Commonwealth's Brief at 4.

Based on our examination of the certified record, we conclude that Pacheco did, in fact, raise and preserve his constitutional challenge to the admission of real-time CSLI evidence. Pacheco filed a supplement to his motion to suppress in which he specifically claimed that prosecutors failed to "seek a search warrant from the [c]ourt to legally utilize 'Mobile Tracking Technology' . . . or similar technology . . . as . . . is required and necessary under Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution." Supplement to Motion to Suppress, 11/18/16, at unnumbered 1-2. Pacheco further claimed that the use of such technology "constitutes a 'search' under constitutional analysis which . . . cannot be authorized without the issuance of a search warrant based on probable cause." **Id**. at unnumbered 2.

Additionally, at the suppression hearing, Pacheco's counsel argued that "the orders that were issued by the [c]ourt for authorization for these electronic surveillances were illegal and unlawful orders because there were no limitations with respect to the manner and number of hours and circumstances that the Commonwealth would be able to utilize the real[-]time tracking technology." N.T. Suppression, 4/10/17, at 7. He further argued that "this is not permitted under the 4th Amendment." *Id*. at 8.

Following the suppression hearing, Pacheco filed a supplemental brief where he again argued that the orders authorizing real-time CSLI tracking of his cell phone under Subchapter E of the Wiretap Act violated Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution "because the [o]rders fail[ed] to satisfy the constitutional protections of the warrant requirement." Memorandum of Law in Support of Supplemental Motion to Suppress, 3/6/17, at unnumbered 14.

Based on these averments, it is clear that Pacheco raised and preserved his constitutional challenge to the orders authorizing real-time CSLI tracking of his cell phone on the basis that such tracking constitutes a search under Fourth Amendment analysis, requiring police to obtain a warrant before they conducted such tracking. Moreover, we disagree with the trial court's determination that the issue, as stated in Pacheco's concise statement, was unduly vague. In our view, the issue was stated with sufficient clarity to identify the pertinent issue on appeal. Pa.R.A.P. 1925(b)(4)(ii).

Having concluded that Pacheco's suppression challenge was sufficiently preserved for our consideration, we employ the following scope and standard of review in addressing his claim:

> whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

**Commonwealth v. Galendez**, 27 A.3d 1042, 1045 (Pa. Super. 2011) (*en banc*) (citation omitted). Additionally, "appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pretrial motion to suppress." **Commonwealth v. Bush**, 166 A.3d 1278, 1281-82 (Pa. Super. 2017) (citation omitted).[11]

On appeal, Pacheco renews his argument that the real-time CSLI tracking of his cell phone constituted a search under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, which required a warrant supported by probable cause based on individualized suspicion. In support of his argument, Pacheco relies on the

---

[11] Thus, even though Pacheco admitted his crimes at trial, we may not consider that evidence when reviewing a suppression ruling.

United States Supreme Court's decision in **Carpenter**, **supra**, which was announced during the pendency of this appeal.[12]

In **Carpenter**, the High Court addressed the question of whether the government conducts a search under the Fourth Amendment when it accesses historical CSLI during the course of a criminal investigation. The High Court aptly explained the CSLI technology in question as follows:

> There are 396 million cell phone service accounts in the United States—for a Nation of 326 million people. Cell phones perform their wide and growing variety of functions by connecting to a set of radio antennas called "cell sites." Although cell sites are usually mounted on a tower, they can also be found on light posts, flagpoles, church steeples, or the sides of buildings. Cell sites typically have several directional antennas that divide the covered area into sectors.
>
> Cell phones continuously scan their environment looking for the best signal, which generally comes from the closest cell site. Most modern devices, such as smartphones, tap into the wireless network several times a minute whenever their signal is on, even if the owner is not using one of the phone's features. Each time the phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI). The

---

[12] Although **Carpenter** was decided subsequent to Pacheco's conviction and sentencing, the United States Supreme Court has instructed that a new rule for the conduct of criminal prosecution is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final. **See Schriro v. Summerlin**, 542 U.S. 348, 351 (2004) (citing **Griffith v. Kentucky**, 479 U.S. 314, 328 (1987)); **see also Commonwealth v. Washington**, 142 A.3d 810, 815 (Pa. 2016) (stating that "new constitutional procedural rules generally pertain to future cases and matters that are pending on direct review at the time of the rule's announcement"). **Carpenter** announced a new rule for the conduct of criminal prosecution; therefore, it applies retroactively to Pacheco's case because it was decided while Pacheco's case was pending on direct review with this Court, and he preserved the issue at all stages of adjudication. **See Commonwealth v. Marshall**, 947 A.2d 714, 719 (Pa. 2008).

precision of this information depends on the size of the geographic area covered by the cell site. The greater the concentration of cell sites, the smaller the coverage area. As data usage from cell phones has increased, wireless carriers have installed more cell sites to handle the traffic. That has led to increasingly compact coverage areas, especially in urban areas.

Wireless carriers collect and store CSLI for their own business purposes, including finding weak spots in their network and applying "roaming" charges when another carrier routes data through their cell sites. In addition, wireless carriers often sell aggregated location records to data brokers, without individual identifying information of the sort at issue here. While carriers have long retained CSLI for the start and end of incoming calls, in recent years phone companies have also collected location information from the transmission of text messages and routine data connections. Accordingly, modern cell phones generate increasingly vast amounts of increasingly precise CSLI.

*Carpenter*, 138 S. Ct. at 2211-12.

Carpenter challenged court orders issued pursuant to the federal Stored Communications Act ("SCA").[13] The orders permitted federal prosecutors to obtain historical CSLI records for Carpenter's cell phone because he was a suspect in a string of robberies. The prosecutors applied for and obtained two orders pursuant to 18 U.S.C.S. § 2703(d) of the SCA directing Carpenter's wireless service providers to disclose historical CSLI information for the four-month interval during which the robberies occurred.[14] The records revealed

---

[13] 18 U.S.C.S. §§ 2701-2713. The SCA is the federal counterpart to Pennsylvania's Wiretap Act.

[14] The first order sought 152 days of historical CSLI from MetroPCS, which produced records spanning 127 days. The second order requested seven days of historical CSLI from Sprint, which produced two days of records covering

the location of Carpenter's cell phone whenever it made or received calls, and placed the phone near four of the charged robberies.

Carpenter unsuccessfully moved to suppress the historical CSLI evidence obtained pursuant to those orders. He argued that the government's seizure of the records violated the Fourth Amendment because they had been obtained without a warrant supported by probable cause. The Court of Appeals for the Sixth Circuit affirmed his subsequent conviction on the basis that Carpenter lacked a reasonable expectation of privacy in the historical CSLI data because he voluntarily shared his location information with his wireless carriers. *See United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016).

In reversing that decision, the United States Supreme Court held that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI. The High Court concluded that CSLI data contains the "privacies of life" because we carry our cell phones everywhere we go. It stated:

> Although such records are generated for commercial purposes, that distinction does not negate Carpenter's anticipation of privacy in his physical location. Mapping a cell phone's location over the course of 127 days provides an all-encompassing record of the holder's whereabouts. As with GPS information, the time-stamped data provides an intimate window into a person's life,

the period when Carpenter's phone was "roaming" in northeastern Ohio. Altogether the Government obtained 12,898 location points cataloging Carpenter's movements—an average of 101 data points per day. *Carpenter*, 138 S. Ct. at 2212.

revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations. These location records hold for many Americans the privacies of life. . . . [A] cell phone—almost a feature of human anatomy, tracks nearly exactly the movements of its owner. While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales.

*Carpenter*, 138 S. Ct. at 2217-18 (internal quotation marks, citations, and paragraph formatting omitted).

The High Court determined that the government's acquisition of Carpenter's historical CSLI records invaded Carpenter's reasonable expectation of privacy in the whole of his physical movements, and constituted a search within the meaning of the Fourth Amendment. *Id*. at 2219.[15] The High Court further ruled that "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Id*. at 2221.

Having found a search occurred, the High Court then examined section 2703(d) of the SCA (which provided the grounds upon which the government

---

[15] In reaching its ruling, the High Court declined to decide whether there is a limited period for which the government may obtain an individual's historical CSLI free from Fourth Amendment scrutiny, and if so, how long that period might be. *Carpenter*, 138 S. Ct. at 2217 n.3. Instead, the Court ruled that "[i]t is sufficient for our purposes today to hold that accessing seven days of CSLI constitutes a Fourth Amendment search." *Id*. Here, the real-time CSLI tracking of Pacheco's cell phone exceeded seven days; hence, under *Carpenter*, it constituted a search under the Fourth Amendment.

acquired the historical CSLI) to determine if the statute withstood Fourth Amendment scrutiny. That provision of the SCA authorizes a federal magistrate judge to issue an order compelling the disclosure of certain telecommunications records when the government "offers specific and articulable facts showing that there are reasonable grounds to believe" that the records sought "are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

In the High Court's opinion, "[t]hat showing falls well short of the probable cause required for a warrant," noting that "[t]he Court usually requires some quantum of individualized suspicion before a search or seizure may take place." *Carpenter*, 138 S. Ct. at 2221 (citation and internal quotation marks omitted). In the Court's view, the fact that law enforcement need only show that the CSLI evidence "***might be pertinent to an ongoing investigation***" presented a "***gigantic***" departure from the probable cause rule. *Id*. (emphasis added). Consequently, the High Court ruled that an order issued under section 2703(d) of the SCA is not a permissible mechanism for accessing historical CSLI records, and that, before compelling a wireless carrier to turn over a subscriber's CSLI, the government must get a warrant. *Id*.

Notably, the High Court in *Carpenter* emphasized that its decision was a narrow one, and did not extend to matters not before it, including the seizure of real-time CSLI, which is at issue in this case. *Id*. at 2220. Nevertheless,

Pacheco asserts that the rationale utilized in **Carpenter** with respect to historical CSLI applies with equal or greater force to real-time CSLI tracking. He argues that historical CSLI is passively generated by a cell phone as it communicates throughout the day with cell towers and the wireless service provider as part of its ordinary operations. By contrast, real-time CSLI tracking requires the wireless service provider to actively send signals to the cell phone at the request of law enforcement. Appellant's Brief at 26-27. Pacheco asserts that "[t]hose signals then reached into [his] pocket, home, car, or wherever the phone was kept, to activate the phone's location subsystem . . . without [Pacheco's] knowledge." **Id**. at 27.

We have found no controlling Pennsylvania appellate decision on this issue.[16] In the wake of **Carpenter**, we found other courts that addressed this question determined that real-time CSLI is subject to the same privacy concerns as historical CSLI. **See United States v. Thompson**, 2019 U.S. Dist. LEXIS 41169, *33 (D.C. Minn. March 7, 2019) (extending **Carpenter** to real-time CSLI, noting "the Fourth Amendment was undoubtedly implicated

_____

[16] A panel of this Court previously considered the question before us, and determined that the collection of real-time CSLI data by law enforcement constitutes a search under the Fourth Amendment; however, that decision was reversed on other grounds. **See Commonwealth v. Rushing**, 71 A.3d 939, 961-64 (holding the "[a]ppellant did have a legitimate expectation of privacy that the government could not surreptitiously track his real time location via his cell phone signal" and that the "police were required to make a showing of probable cause in order to obtain real time cell site information data," and to demonstrate "exigent circumstances" in the absence of a warrant), _rev'd on other grounds_, 99 A.3d 416 (Pa. 2014).

and a warrant based on a showing of probable cause was required"); **United States v. Williams**, 2019 U.S. Dist. LEXIS 64324, *31 (S.D. Ga. Feb. 27, 2019) (concluding that the **Carpenter** analysis appears to apply equally to the collection of real-time CSLI); **Sims v. State**, 569 S.W.3d 634, 645 (Tex. Crim. App. 2019) ("Even though **Carpenter** dealt with historical CSLI, not real-time location information, we believe that the Court's reasoning in **Carpenter** applies to both kinds of records."); **see also United States v. Chavez**, 2019 U.S. Dist. LEXIS 33210, at *41 (N.D. Cal. Mar. 1, 2019) (discussing **Carpenter**'s application to historical CSLI and noting, in *dicta*, that "[e]ventually, the same may be expected of real-time cell-site location information, where an individual has arguably an even greater expectation of privacy"); **State v. Brown**, 202 A.3d 1003, 1014 n.9 (Conn. 2019) (stating, in *dicta*, that "we see no difficulty in extending the rationale of **Carpenter** as applied to historical CSLI to prospective orders").

Notably, even before **Carpenter** was decided, several courts had determined that when law enforcement obtained CSLI in the context of a criminal investigation, it constituted a search under the Fourth Amendment, and thus required a warrant. **See**, **e.g**., **United States v. Ellis**, 270 F. Supp. 3d 1134, 1145 (N.D. Cal. 2017) (holding "that cell phone users have an expectation of privacy in their cell phone location in real time and that society is prepared to recognize that expectation as reasonable"); **In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of a**

*Specified Wireless Tel.*, 849 F. Supp. 2d 526, 539 (D. Md. 2011) (finding a "reasonable expectation of privacy both in [subject's] location as revealed by real-time [CSLI] and in his movement where his location is subject to continuous tracking over an extended period of time"); *In re Application of U.S. for an Order Authorizing the Release of Historical Cell-Site Info. (In re Application (E.D.N.Y.))*, 809 F. Supp. 2d 113, 119-20 (E.D.N.Y. 2011) (concluding that cell-phone users maintain a reasonable expectation of privacy in long-term CSLI records and that the government's obtaining these records constitutes a Fourth Amendment search); *Tracey v. State*, 152 So. 3d 504, 525-26 (Fla. 2014) (holding that real-time CSLI data was protected by the Fourth Amendment, and thus, its use by law enforcement constituted a search which required a warrant based upon probable cause); *Commonwealth v. Augustine*, 4 N.E.3d 846, 866 (Mass. 2014) (holding that the government-compelled production of the defendant's CSLI records constituted a search in the constitutional sense which required a warrant); *State v. Earls*, 70 A.3d 630, 644 (N.J. 2013) (holding that police must obtain a warrant based on a showing of probable cause, or qualify for an exception to the warrant requirement, to obtain tracking information through the use of a cell phone).

We see no meaningful distinction between the privacy issues related to historical as opposed to real-time CSLI. Indeed, in our view, the High Court's rationale in *Carpenter* applies with equal, if not greater, force to real-time

CSLI. Thus, we conclude that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through both historical and real-time CSLI. Accordingly, prosecutors need to obtain a warrant supported by probable cause before obtaining this information.

Having concluded that the privacy concerns identified in **Carpenter** with respect to historical CSLI apply equally to real-time CSLI tracking, we must next determine whether the grounds upon which the Montgomery County District Attorney's Office applied for and obtained the orders authorizing the real-time CSLI tracking of Pacheco's cell phone satisfy Fourth Amendment considerations. Applying **Carpenter** to the facts of this case, it appears that the Commonwealth did not comply with the Fourth Amendment in its reliance on orders obtained pursuant to Subchapter E of the Wiretap Act to access Pacheco's real-time CSLI from a third-party provider. Prosecutors applied for these orders pursuant to section 5772, which permits them to seek an order compelling, *inter alia*, mobile communications tracking information upon "a certification by the applicant that the information likely to be obtained is **relevant to an ongoing criminal investigation** being conducted by that agency." 18 Pa.C.S.A. § 5772(b)(2) (emphasis added). The court may then authorize such tracking upon a finding "[t]hat there is probable cause to believe that information **relevant to an ongoing criminal investigation** will

be obtained from the targeted telephone." *Id*. at § 5773(b)(1)(i) (emphasis added).[17]

This standard is strikingly similar to the corresponding provision of the SCA, which the *Carpenter* Court deemed constitutionally inadequate under the Fourth Amendment. Under that provision, federal prosecutors could obtain an order compelling the disclosure of CSLI records when they showed "reasonable grounds" for believing that the records were "***relevant and material to an ongoing criminal investigation***." 18 U.S.C. § 2703(d) (emphasis added). As noted above, the High Court ruled that this standard of proof falls "well short" of the probable cause required for a warrant, and that some quantum of individualized suspicion is usually required before a search or seizure may take place. *Carpenter*, 138 S. Ct. at 2221.

Although Subchapter E of the Wiretap Act calls for a finding of "probable cause," as opposed to the SCA's requirement for "reasonable grounds," we believe that this distinction is immaterial. Both statutes merely require that

---

[17] Our review of the orders in question reveals that the court limited its probable cause ruling to the specific language of 18 Pa.C.S.A. § 5773(b)(1)(i), and made no additional finding of probable cause predicated upon individualized suspicion, as required to support a search warrant under the Fourth Amendment. *See Carpenter*, *supra* at 2221; *cf*. *United States v. Thompson*, 2019 U.S. Dist. LEXIS 41169 (D.C. Minn. March 7, 2019) (holding that although the application for an order authorizing real-time CSLI tracking referenced an outdated standard, no *Carpenter* violation occurred because it was clear that the issuing judge found probable cause for the cell-phone warrant)

the information sought be ***relevant to an ongoing criminal investigation***. Critically, neither statute requires any quantum of individualized suspicion. Given that the standard of proof for an order to obtain CSLI under Subchapter E of the Wiretap Act[18] requires no quantum of individualized suspicion, we are constrained to conclude that, under ***Carpenter***, this order not a constitutionally permissible means to access either historical or real-time CSLI records. Instead, ***Carpenter*** dictates that to obtain a wireless subscriber's CSLI, prosecutors must get a warrant supported by individualized suspicion. ***Carpenter***, 138 S. Ct. at 2221.

Based on the record before us, we conclude that the real-time CSLI evidence seized from Pacheco's cell phone was the product of a constitutionally defective warrantless search under the rationale of ***Carpenter***. Accordingly, the trial court erred in denying Pacheco's motion to suppress the real-time CSLI evidence obtained by law enforcement. However, as Pacheco's suppression challenge is limited to the admission of real-time CSLI, our decision does not affect the trial court suppression ruling as it relates to other challenged evidence. We therefore vacate Pacheco's judgment of sentence, reverse in part and affirm in part the order denying suppression, and remand for further proceedings consistent with this Opinion.

---

[18] 18 Pa.C.S. §5773(b)(1)(i).

- 21 -

Given our determination that the orders permitting the real-time CSLI tracking of Pacheco's cell phone were constitutionally infirm under the Fourth Amendment, we need not address Pacheco's other appellate issues.

Judgment of sentence vacated, suppression order affirmed in part and reversed in part, case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/19