J-S33038-18

2018 PA Super 169

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN KOONCE | : | |
| | : | |
| Appellant | : | No. 804 EDA 2017 |

Appeal from the Judgment of Sentence January 25, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000620-2016

BEFORE: OTT, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED JUNE 15, 2018**

Appellant Jonathan Koonce appeals from the judgment of sentence of four years' reporting probation entered in the Court of Common Pleas of Montgomery County on January 25, 2017, following his conviction in a stipulated non-jury trial of possession with intent to deliver (marijuana).[1] We affirm.

The trial court aptly set forth the relevant facts revealed at the suppression hearing as follows:

> The credible testimony of the Commonwealth witnesses, Detective Christopher Schwartz of the Plymouth Township Police Department and Detective Iran Millan of the Montgomery County Detective Bureau established the following facts. In November of 2015, Detective Christopher Schwartz of the Plymouth Township Police Department met with a CI[2] to set up a controlled buy. (Motion to Suppress 1/17/2017 pp. 4, 5). Detective Schwartz is

---

[1] 35 Pa.C.S.A. § 780-113(a)(16).
[2] The abbreviation CI will be used throughout this Opinion in reference to the confidential informant.

---

\* Former Justice specially assigned to the Superior Court.

an experienced police officer, with specific training and experience in drug enforcement. Id. at 4. The detective testified that he has worked with this CI on or about two or three prior occasions, and that the CI has been reliable in the past. Id. at 5-6. He also indicated that the CI had provided information to other detectives about eight times. Id. at 5. In every case that [ ] Detective Schwartz investigated using this CI, the information was corroborated and led to arrests and seizure of drugs. Id. at 6.

On November 23, 2015, Detective Schwartz met with this particular CI to establish a plan. Id. at 6. The CI informed that he had arranged a delivery of one pound of marijuana from an individual named Pope. Id. He and Pope met online and later spoke by phone, and the CI provided the detective with this individual's cell phone number. Id. The CI told Detective Schwartz that he believed Pope was from the New York area. Id. at 7. The detective was able to confirm that the cell phone number was a New York number, but he was unable to identify it as having come from a person named Pope. Id. at 21-22, 34. The CI also believed that Pope would be traveling with a female named Ava, or some variation of that. Id. All of the CI's information came from the communication between the CI and Pope.

They decided to do the controlled buy. The police had the CI come down to the police department, and as per the usual protocol with informants on controlled buys, the CI's person was searched to assure that no contraband or U.S. currency was present on the CI. Id. The police also thoroughly searched the CI's vehicle for any contraband or U.S. currency. Id. Neither search turned up anything improper. Id. at 8. The CI was provided with prerecorded U.S. currency of $3,600, which had been established as the going price from [sic] high-end marijuana at that time. Id. at 8. Detective Schwartz physically placed the $3,600 into a black backpack and then placed it in the trunk of the CI's vehicle for transport to the scene. Id. at 8. The CI was instructed that in the event that the person from New York delivered the marijuana to him, he was to go to the trunk, retrieve the money and get back into his vehicle. Id. at 8-9. It was significant to this controlled buy that the backpack with the money would be in the trunk because it was the signal to law enforcement that the delivery transaction took place. Id. at 8-9.

The CI never left the officers' presence. Id. at 9. The location of the drug transaction was to be at Wendy's restaurant in Conshohocken, Plymouth Township. Id. Several detectives established surveillance at the meet location parking lot. Id. There were police officers positioned across the street. Id. at 10.

Further, Detective Schwartz was in a position to view the CI's vehicle and Wendy's. Id. at 9.

The detective followed directly behind the CI from the police station to meet location. Id. The CI did not do anything he was not supposed to do. Id. at 9-10. The CI did not make any stops on the way and no one other than the CI was in the vehicle. Id. at 9. Detective Schwartz arrived at the Wendy's parking lot and set up surveillance. Id. at 10. There were two main surveillance detectives, Detective Schwartz and Detective Iran Millan from the Montgomery County Detective Bureau. Id.

Once the CI was in the Wendy's the CI did not go to the bathroom and the CI did not talk to anyone else. Id. at 11. The CI did meet with the individual who was later identified as [Appellant] inside the Wendy's. Id. The individual arrived on foot empty-handed. Id. at 12-13. The meeting was brief. Id. at 13. [Appellant] left the restaurant, and went back in the direction where he had come from. Id. at 14. [Appellant] returned a short time later carrying a black backpack. Id. at 14. He got into the CI's vehicle. Id.

Less than three minutes after [Appellant] got into the vehicle, the CI exited the vehicle and went to the trunk where the backpack full of the prerecorded currency was located. Id. at 15. After retrieving the money, the CI got back into his vehicle. Id. The police waited less than a minute so the transaction could be completed, then they moved in and made the arrest. Id. at 15-16. At that time, the police found the marijuana with the CI and the money with [Appellant]. Id. at 16-17

Detective Schwartz testified and explained that the CI's safety would be jeopardized if the [c]ourt compelled the disclosure of the CI's identity. Id. at 17-18.

Trial Court Opinion, filed 5/1/17, at 5-8.

Appellant filed a motion to suppress physical evidence on May 11, 2016. Also contained therein was a motion to produce confidential informant. A suppression hearing was held on January 17, 2017, and following the hearing, the suppression court denied both Appellant's motion to suppress and his motion to produce confidential informant in separate orders entered on January 19, 2017.

A stipulated non-jury trial was held on January 25, 2017, at which time the testimony obtained at the suppression hearing was incorporated and the trial court admitted the stipulated bench trial colloquy. *See* N.T. Trial, 1/25/17, at 10. At the conclusion of trial, Appellant was found guilty of the aforementioned offense and immediately sentenced as previously indicated. *Id*. at 11. Appellant did not file a post-sentence motion; however, he filed a timely notice of appeal on February 22, 2017. On February 24, 2017, the trial court entered its Order directing Appellant to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1926(b), and Appellant complied on March 13, 2018, wherein he presented four claims for the trial court's review.

In his appellate brief, Appellant sets forth the following Statement of Questions Presented:

> 1. Whether [t]rial [c]ourt committed error by not ordering Commonwealth to disclose the identity of a confidential informant who was the only eyewitness to defendant being in possession of controlled substance, and was only person with knowledge of the content of communications between confidential informant and [Appellant]?
>
> 2. Whether the [t]rial [c]ourt committed error by finding probable cause existed, allowing the police to seize/arrest [Appellant], where police had not seen [Appellant] in possession of any contraband?

Brief for Appellant at 3.

When considering Appellant's first claim, we are mindful of the following:

- 4 -

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." **Commonwealth v. Washington**, 63 A.3d 797, 801 (Pa.Super. 2013).

Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:

> (a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
>
> (i) the names and addresses of eyewitnesses....

Pa.R.Crim.P. 573(B)(2)(a)(i).

The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. **Commonwealth v. Bing**, [551 Pa. 659, 713 A.2d 56 (1998)]; **Commonwealth v. Roebuck**, 545 Pa. 471, 681 A.2d 1279, 1283 n. 6 (1996). In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. **Roebuck, supra** at 1283. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth. **Bing**, **supra** at 58; **Commonwealth v. Herron**, 475 Pa. 461, 380 A.2d 1228 (1977).

In striking the proper balance, the court must consider the following principles:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair

determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

[N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
*Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284, 287 (1967) (quoting *Roviaro v. United States*, 353 U.S. 53, 60–62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)).
*Commonwealth v. Marsh*, 606 Pa. 254, 260–261, 997 A.2d 318, 321–322 (2010).

*Commonwealth. v. Watson*, 69 A.3d 605, 607–08 (Pa.Super. 2013)

(quotation marks omitted).

Herein, Appellant maintains:

. . . the defense theory is that the confidential informant "framed" [Appellant], and because the confidential informant was the only eyewitness to the transaction, this theory would be plausibly aided by the identity of the informant.
Evidence that the CI framed [Appellant] could affect the outcome of the trial. Therefore, [Appellant] has satisfied the threshold requirement of materiality and reasonableness by showing that the evidence of record supports a reasonable possibility that the information he seeks would be helpful.

Brief for Appellant at 8. Appellant posits that "only [Appellant] and the CI saw what changed hands in the controlled buy [which] mitigates in favor of disclosure." *Id*. at 9. Appellant stresses the Commonwealth produced no evidence that the CI would be endangered were his identity revealed, and he

cites to the testimony of Detective Schwartz that conceded Appellant had not been threatened and indicated an uncertainty as to any danger to Appellant were the identity of the CI revealed. *Id*. at 9. Appellant further notes the chance of possible threats is lessened by the fact that he and the CI met for the first time on the day of the drug buy, as Appellant was from New York, and he had known nothing about the CI previously. *Id*.

Upon our review of the record, we find the suppression court did not abuse its discretion in finding Appellant had failed to make the threshold presentation of materiality and reasonableness. Appellant does not pursue a misidentification defense. Instead, he baldly asserts that he was "framed," and, therefore, as the CI was the only eyewitness to the transaction, he should have had the opportunity to confront the CI. The record belies Appellant's claim, for the CI's trustworthiness was established through the credible testimony of Officer Schwartz who stated he and other officers had gained valuable information from the CI which led to narcotics arrests in the past. N.T. Suppression, 1/17/17, at 5-6.

Also, the testimony of Officers Schwartz and Millan concerning their personal observations of the transaction substantiated the information the CI had provided. Moreover, as the suppression court explains, most problematic with Appellant's claim is that "[a]lthough the CI was the only witness to the actual hand-to-hand drug transaction, the police, both Detective Schwartz and

Detective Millan saw every other aspect of the transaction." Trial Court Opinion, 5/1/17, at 11.

Even had Appellant satisfied the threshold presentation of materiality and reasonableness before the suppression court, he has neither presented record support for his defense he was "framed" nor provided a plausible explanation as to how the CI's testimony could have benefitted him. **See Watson**, **supra**, at 609. It is clear that "allegations alone do not supplant the need to make an actual evidentiary showing" that disclosure of a witness's identity is material to a defense. **Marsh**, 606 Pa. at 261, 997 A.2d at 322. "[B]efore disclosure of an inform[ant's] identity is required in the face of the Commonwealth's assertion of privilege, more is necessary than a mere assertion by the defendant that such disclosure might be helpful in establishing a particular defense." **Commonwealth v. Herron**, 475 Pa. 461, 466, 380 A.2d 1228, 1230 (1977) (holding that the defendant failed to provide a "sufficient factual foundation to enable the trial judge to conclude that knowing the inform[ant]'s identity might be helpful in establishing an entrapment defense" where defendant failed to establish specific facts supporting entrapment through witnesses or, at a minimum, an offer of proof). **Cf. Commonwealth v. Payne,** 540 Pa. 54, 60, 656 A.2d 77, 80 (1994) (holding that where a single police officer is the only eyewitness to a crime other than the CI, the arrest was not made shortly after the crime, and the

defendant has presented evidence supporting a mistaken identity defense, justice requires the disclosure of the CI's identity).

While cross-examination of the Commonwealth's witnesses may be enough in some cases to lay an evidentiary foundation for materiality and reasonableness, the cross-examination herein was insufficient to meet the defense's burden. To the contrary, Appellant's questioning of Officers Schwartz and Millan failed to show how the revelation of the CI's identity and his or her subsequent testimony would have aided Appellant's defense or otherwise exonerated him. Moreover, unlike the defendant in *Payne*, *supra*, Appellant failed to offer any other evidentiary showing that would demonstrate the identity of the CI was material to his defense.

Appellant is correct that the only witness to the actual transaction in the CI's vehicle was the CI; however, multiple police officers observed Appellant and the informant in relatively close range during daylight hours in the moments leading up to and immediately after the transaction both inside the Wendy's restaurant and in the area surrounding the vehicle in which the transaction occurred. The CI met with no other individual other than Appellant in Wendy's, and Officers had searched the CI and his vehicle prior thereto to ensure he was not in possession of any contraband or U.S. currency. N.T. Suppression, 1/17/17, at 7-17, 48, 52-55. In addition, the vehicle was under constant police surveillance, and no one other than Appellant and the CI approached or entered the automobile. *Id*. at 15-16. Appellant was arrested

moments after the drug buy, at which time only Appellant and the CI were inside the car. The CI was in possession of a black backpack which contained a sealed bag of approximately one pound of marijuana, and Appellant possessed $3,600.00 belonging to law enforcement. *Id*. at 17. Under these circumstances, Appellant's position he was framed is wholly untenable.

Furthermore, Detective Schwartz testified he believed the CI's safety would be jeopardized were the trial court to compel the disclosure of his identity. The Detective explained, "this informant has worked on several cases beyond [Appellant's] case. Was a valuable asset that led to what I would deem significant seizures. He has directly told myself and my partner his fear in cooperating, his fear of retaliation, and I find it to be extremely reasonable." N.T. Suppression, 1/17/17, at 18. Therefore, based on the foregoing, we find no abuse of discretion in the suppression court's determination that disclosure was not mandated in light of Appellant's failure to make a threshold showing of materiality and in its finding that revealing the identity of the CI would jeopardize his or her safety. *See* Trial Court Opinion, filed 5/1/17, at 11. Thus, Appellant's first claim lacks merit.

Appellant next contends officers lacked probable cause to arrest him. Appellant reasons that there was insufficient evidence the CI's tip was reliable and no corroborating evidence existed to substantiate the information the CI had provided, other than Officer Schwartz's representations that this CI had been reliable in the past and had provided information that led to arrests and

seizure of narcotics. Brief for Appellant at 10. Appellant argues the paucity of information the CI provided, coupled with the lack of support of any investigation which is evident in the fact that officers were unable to corroborate cell phone information, lacked a physical description of Appellant, and never observed him with contraband either prior to or at the time of arrest, reveals no probable cause existed to justify a warrantless arrest. *Id*. at 10-11.

When considering the instant claim, we are mindful of the following:

> Our standard of review ... is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa.Super. 2011) (*en banc*) (citation omitted), *appeal denied*, 615 Pa. 753, 40 A.3d 120 (2012). Additionally, "[a]ppellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pretrial motion to suppress." *Commonwealth v. Bush*, 166 A.3d 1278, 1281-82 (Pa.Super. 2017) (citation omitted), *appeal denied*, 176 A.3d 855. "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Id.* at 1282 (citation omitted).

In evaluating Appellant's argument that he was unlawfully arrested because officers did not corroborate the unreliable information they had received from the CI, and, therefore, the evidence recovered pursuant to his arrest should be suppressed, we take note that law enforcement authorities must have a warrant to arrest an individual in a public place unless they have probable cause to believe that (1) a felony has been committed; and (2) the person to be arrested is the felon. **See Commonwealth v. Martin**, 101 A.3d 706, 721 (Pa. 2014). As we have stated:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a *probability*, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

**Commonwealth v. Thompson**, 614 Pa. 198, 203, 985 A.2d 928, 931 (2009) (emphasis in original) (citations and quotation marks omitted).

An officer's determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner. **Commonwealth v. Gagliardi**, 128 A.3d 790, 795 (Pa.Super. 2015) (citing **Commonwealth v. Clark**, 611 Pa. 601, 28 A.3d 1284, 1288 (2011). Information provided by a CI "may constitute probable cause where police independently corroborate the tip, or where the informant has provided

accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." *Id*. at 795-96.

Herein, the suppression court found:

the information that the police possessed and the manner in which they carried out the investigation supports an abundant finding of probable cause. Initially, the CI [ ] gave to Detective Schwartz the source of his information. In other words, the detective knew how the CI got his information, and it was from the direct communication between the CI and [Appellant]. In addition, the controlled buy happened in the way that the police had planned it. Detective Schwartz was told by the CI that the buy had taken place when he went to the trunk, retrieved the backpack with the $3,600 in prerecorded U.S. currency and got back into his car. The police observed conduct consistent with illegal drug activity by [Appellant], and based on that at the bare minimum, they certainly had reasonable suspicion that criminal activity was afoot, justifying the brief detention. This quickly ripened into probable cause upon the finding of the marijuana with the CI and the money with [Appellant].

Trial Court Opinion, filed 5/1/17, at 8.

The record supports the suppression court's findings that Appellant's arrest was supported by probable cause that he was involved in the felonious sale of drugs to the CI, and thus, we are bound by those findings. **See Galendez**, **supra**. The information from the CI, who had provided accurate information to Detective Schwartz in the past, coupled with and substantiated by the officers' direct observation of the conduct of Appellant and the CI, was sufficient to warrant a person of reasonable caution to believe that Appellant delivered to the CI the marijuana officers discovered in the black backpack in the vehicle. **See id.**; **see also Gagliardi**, **supra**. Thus, Appellant's warrantless arrest was lawful, and the contraband seized was admissible.

- 13 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/18