J-S36027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SONYA VERNA BAIR | : | |
| | : | |
| Appellant | : | No. 1681 MDA 2018 |

Appeal from the Judgment of Sentence Entered September 4, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004808-2016

BEFORE: PANELLA, P.J., SHOGAN, J., and PELLEGRINI*, J.

MEMORANDUM BY SHOGAN, J.:         **FILED AUGUST 14, 2019**

Sonya Verna Bair ("Appellant") appeals from the judgment of sentence imposed on September 4, 2018, in the Court of Common Pleas of Lancaster County. We affirm.

This case stems from Appellant's sale of cocaine and heroin to a confidential informant ("CI") on June 28, 2016. After a two-day trial in June 2018, a jury found Appellant guilty *in absentia* of delivery of cocaine and heroin, 35 P.S. § 780-113(a)(30), and criminal use of a communication facility, 18 Pa.C.S. § 7512(a). The trial court sentenced Appellant *in absentia* to incarceration for an aggregate term of two and one-half to ten years. This appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our consideration:

    I.    Where the CI who allegedly received controlled substances from [Appellant] was the only person who actually

_____

* Retired Senior Judge assigned to the Superior Court.

witnessed the alleged drug transaction, and the CI was *not* within view at all times after being provided with money and dispatched to purchase drugs, did the trial court err in refusing to compel the identity of the CI?

II.     Where the CI was a necessary and material witness who was solely available to the Commonwealth, did the trial court err in refusing to give a missing witness instruction to the jury?

III.    Did the trial court err in permitting [Officer] Jared Snader and [Sergeant] Damon Greathouse to narrate the [Lancaster Safety Coalition] video which purportedly showed [Appellant] delivering controlled substances to a CI, and in overruling defense counsel's objection to the prosecutor eliciting an answer from Jared Snader to the question "what are they about to do?," where the officers' testimony called for speculation and was based on the inadmissible hearsay statements of the CI to police?

Appellant's Brief at 7.

In Appellant's first issue, she challenges the denial of her request to disclose the CI's identity. Appellant's Brief at 20. The trial court provided the following backdrop for this claim:

On May 13, 2018, defense counsel filed a Motion for Pretrial Discovery alleging that the drug transaction was set up by a CI, it involved Appellant and the CI, it occurred behind a parked vehicle, it was not eye-witnessed by a third party, and the Lancaster Safety Coalition ("LSC") video did not capture the transaction. *See* Motion for Pretrial Discovery. Therefore, Appellant was seeking the identity of the CI as the only fact witness. *Id.*

The Commonwealth filed an answer objecting to the motion on May 17, 2018. *See* Commonwealth's Answer to Defendant's Motion to Disclose Confidential Informant. In [its] Answer, the Commonwealth asserted the hand-to-hand transaction took place on a public street, the CI was at all times under the direct visual surveillance of multiple police officers or real-time electronic surveillance by a LSC camera, the cellular number used by the CI to arrange for the transaction was traced back to Appellant, and the CI did not engage with anyone other than Appellant. *Id.* at

- 2 -

¶¶ 7–9. Thus, the CI was not a necessary witness to establish the identity of Appellant, there was no reasonable possibility of misidentification, and the identity or production of the CI was not reasonable or material to the preparation of the defense. *Id.* at ¶¶ 13–17.

The Commonwealth filed an amended answer on May 23, 2018, stating that disclosure of the CI's identity would present a danger to the CI. *See* Commonwealth's Amended Answer to Defendant's Motion to Disclose Confidential Informant at ¶¶ 15(A)–(C). According to the Commonwealth, many of Appellant's family members are involved in or suspected of being involved in violent crimes. *Id.* at ¶ 15(C).[5] Furthermore, although the CI's face is visible in the video, Appellant may not have independent recollection of the CI's identity. *Id.* at ¶ 15(A). However, disclosure on paper of identifying characteristics would immediately result in this information being placed on social media websites and/or disclosed to family members and other persons. *Id.* Additionally, "other defendants, many of whom may not be under arrest, will then be able to glean that this [CI] may have purchased from them, thereby placing those investigations in jeopardy and becoming a danger to this [CI]." *Id.* at ¶ 15(B).

> [5] As stated in the amended answer, "Appellant's son, Kevon Thompson, has multiple recent arrests and has been the name of interest in recent weapons and robbery calls. A second of her sons, Rodney Hope, was recently released from state prison. Her third child, Denise Dixon, is listed as being at Lancaster County Prison. One of her two sisters, Shante Hair, was recently arrested for assault. Any of these people present a danger to the [CI]." *See* Commonwealth's Amended Answer to Defendant's Motion to Disclose Confidential Informant at ¶ 15(C).

On May 31, 2018, the trial court entered an order denying Appellant's Motion for Pretrial Discovery, finding that Appellant had failed to overcome the qualified privilege of withholding the identity of the CI because she did not establish that the CI's identity was reasonable or material to the defense. *See* 5/31/18 Order. Assuming, *arguendo*, Appellant had overcome this qualified privilege, the motion would still be denied after balancing the relevant factors with information contained in Appellant's motion and the Commonwealth's answers thereto. *Id.*

J-S36027-19

Trial Court Opinion, 11/28/18, at 2–4 (one footnote omitted).

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." ***Commonwealth v. Watson***, 69 A.3d 605, 607 (Pa. Super. 2013) (quoting ***Commonwealth v. Washington***, 63 A.3d 797 801 (Pa. Super. 2013)).

> Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:
>
> > (a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
> >
> > (i) the names and addresses of eyewitnesses....
>
> Pa.R.Crim.P. 573(B)(2)(a)(i).
>
> The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. ***Commonwealth v. Bing***, [713 A.2d 56 (1998)]; ***Commonwealth v. Roebuck***, 545 Pa. 471, 681 A.2d 1279, 1283 n. 6 (1996). In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. ***Roebuck***, ***supra*** at 1283. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant

- 4 -

factors, which are initially weighted toward the Commonwealth. ***Bing***, ***supra*** at 58; ***Commonwealth v. Herron***, 475 Pa. 461, 380 A.2d 1228 (1977).

***Commonwealth v. Koonce***, 190 A.3d 1204, 1208–1209 (Pa. Super. 2018).

If a defendant is able to establish the threshold showing of materiality and reasonableness, the court must:

> balance the public interest in the police's ability to obtain information against the defendant's right to prepare his defense. In this connection, we consider the crime, the potential defense, and the significance of the confidential informant's testimony. **The scales tip in favor of disclosure if the Commonwealth will be relying on police testimony based on a single observation**. If other proof corroborates a police officer's testimony, disclosure is not mandated. Furthermore, **the safety of the confidential informant can be a controlling factor in determining whether to reveal a source's identity**.

***Commonwealth v. Jordan***, 125 A.3d 55, 63 (Pa. Super. 2015) (emphases added).

On appeal, Appellant maintains, "[T]he CI could have obtained controlled substances from someone other than [Appellant], prior to coming into contact with her, and that the CI was the only eyewitness to his alleged receipt of controlled substances from [Appellant]." Appellant's Brief at 21–22. Moreover, Appellant claims, because the CI was out of the police officers' view, "the CI could have exculpated [Appellant] as the person who had delivered heroin and cocaine to him, and his testimony was material." ***Id.*** at 22. The Commonwealth counters, "[T]he defense has not met [its] establishment requirement, where there is no defense of mistaken identity

- 5 -

and Appellant asserts no actual evidence of how the CI's identity would aid in [her] defense." Commonwealth's Brief at 10.

Upon review of the parties' briefs, the certified record—including the LSC video—and the controlling law, we conclude the trial court correctly determined that Appellant did not meet her threshold showing of materiality and reasonableness. **Koonce**, 190 A.3d at 1209; **Jordan**, 125 A.3d at 63.[1] This was a determination left to the sound discretion of the trial court, and we discern no abuse of that discretion. Appellant did not pursue a mistaken-identity defense at trial, two officers corroborated her identity, the CI was within view of the surveillance officers, and none of the officers saw the CI make contact with any other person from whom he could have purchased the controlled substances. N.T., 6/27/18, at 113–115, 144, 209–215, 240–241, 243, 267–268. **Compare Commonwealth v. Carter**, 233 A.2d 284, 287 (Pa. 1967) (CI's identity disclosed where identification of defendant was based on single police viewing); **Commonwealth v. Payne**, 656 A.2d 77 (Pa. 1994) (CI's identity disclosed where officer did not know defendant, defendant was arrested seven months after buy, and officer was only prosecution witness). In reaching our conclusion, we rely on and adopt as our own the well-reasoned

_____

[1] Because the trial court properly determined that Appellant failed to meet her threshold burden of establishing materiality and reasonableness, it did not have to engage in any balancing. **Koonce**, 190 A.3d at 1209; **Jordan**, 125 A.3d at 63.

analysis of the Honorable Donald R. Totaro in his Pa.R.A.P. 1925(a) opinion. Trial Court Opinion, 11/28/18, at 7–10.[2]  Accordingly, Appellant's first issue does not warrant relief.

In her second issue, Appellant contends the trial court erred in failing to give a missing-witness instruction to the jury, given the fact that the Commonwealth did not call the unidentified CI to testify.  Appellant's Brief at 26, 27 (citing Pennsylvania Suggested Standard Criminal Jury Instruction 3.21A).  According to Appellant, "the CI's testimony was material [because he was the only eye-witness], and the Commonwealth did not show that the CI's safety would be jeopardized."  *Id.* at 29.

In contrast, the Commonwealth maintains that the trial court considered the safety of the CI and "the effectiveness of other ongoing criminal investigations" in denying the requested instruction.  Commonwealth's Brief at 15.  Moreover, the Commonwealth points out that "Appellant makes no argument as to the prejudice provided by this missing jury instruction and only makes argument regarding the missing identity of the [CI]."  *Id.*

The following principles guide our review:

> [T]he trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

---

[2]  We direct the parties to attach a copy of the trial court's November 28, 2018 opinion in the event of further proceedings in this matter.

*Commonwealth v. Scott*, 73 A.3d 599, 602 (Pa. Super. 2013) (internal quotation marks and citations omitted). "The relevant inquiry for this Court when reviewing a trial court's failure to give a jury instruction is whether such charge was warranted by the evidence in the case. If the instruction proffered is inapplicable and improper, the court should not charge on it." *Commonwealth v. Boyle*, 733 A.2d 633, 639 (Pa. Super. 1999) (citations omitted).

The "missing witness" inference rule provides as follows:

When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable.

*Commonwealth v. Jones*, 317 A.2d 233, 237 (Pa. 1974). The following circumstances preclude issuance of the instruction:

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and,

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Commonwealth v. Evans*, 664 A.2d 570 (Pa. Super. 1995) (quoting *Commonwealth v. Boyd*, 514 A.2d 623, 626 (Pa. Super. 1986)).

Here, the trial court declined to give the missing-witness instruction because it found that the Commonwealth's "safety concerns related to disclosure of the CI's identity . . . was a satisfactory explanation for why the Commonwealth did not call the CI as a witness." Trial Court Opinion, 11/28/18, at 12 (citing N.T., 6/27–28/18, at 254–256, 267–274). We discern no abuse of discretion.

Furthermore, Appellant fails to demonstrate that (1) the CI has special information material to Appellant's assertion that the CI could have bought contraband from someone else, and (2) the CI's testimony would not be merely cumulative of the police officers' testimony. *Jones*, 317 A.2d at 237. Here, the record establishes that before and after the CI met Appellant, Officer Adam Flurry searched him and did not find any money, contraband, or weapons. N.T., 6/27/18, at 109–110, 120–121, 139–140. The surveillance officers testified unequivocally that the CI did not make contact with any person or location, other than Appellant on South Queen Street, from whom or where he could have obtained the controlled substances. *Id.* at 134–135, 143–147, 151–153, 168–169, 174, 179, 209–214, 241, 243. Therefore, Appellant's second issue does not warrant relief.

In her last issue, Appellant raises two claims. First, Appellant argues that the trial court erred in allowing Officer Snader and Sergeant Greathouse

to "narrate" the LSC video. Appellant's Brief at 30. Second, Appellant contends that the trial court erred in overruling an objection to the prosecutor eliciting speculative testimony from Officer Snader. *Id.* We note that Appellant has not developed her second claim with argument or citation to authority as required by Pa.R.A.P. 2119(a). Therefore, we deem it waived.[3] *See Commonwealth v. Delvalle*, 74 A.3d 1081, 1086–1087 (Pa. Super. 2013) (finding claims waived for failure to develop them meaningfully).

As for Appellant's narration-based claim, the following principles guide our review:

> The admission of videotaped evidence is always within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Commonwealth v. Stark*, 363 Pa. Super. 356, 526 A.2d 383 (1987). "Admissibility depends on relevance and probative value. Evidence is relevant if it logically

---

[3] The trial court addressed this claim in a footnote:

> In her [Pa.R.A.P. 1925(b)] Statement, Appellant also claims the trial court erred in overruling defense counsel's objection to the prosecutor eliciting an answer from Officer Snader to the question "what are they about to do," which Appellant suggests called for speculation and invaded the province of the jury. During [Officer] Snader's testimony, the prosecutor asked [Officer] Snader the following: "In your experience and training, what are they about to do in the next frame?" (N.T. at 167). Defense counsel objected, claiming this was opinion testimony as to what was going on. *Id.* The objection was overruled. *Id.* Pursuant to [*Commonwealth v. Cole*, 135 A.3d at 191 (Pa. Super. 2016),] and [*Commonwealth v. Palmer*, 192 A.3d 85 (Pa. Super. 2018)], this testimony was permissible in relation to what was depicted on the video, and the objection was properly overruled.

Trial Court Opinion, 11/28/18, at 16 n.13.

tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact." ***Commonwealth v. Drumheller***, 570 Pa. 117, 808 A.2d 893, 904 (2002) (quoting ***Commonwealth v. Stallworth***, 566 Pa. 349, 781 A.2d 110, 117–118 (2001)).

***Commonwealth v. Cole***, 135 A.3d 191, 194–195 (Pa. Super. 2016).

According to Appellant, Officer Snader's and Sergeant Greathouse's narration of the video was inadmissible on myriad grounds: it was based on speculation rather than personal knowledge; it was based on the hearsay statements of the CI to police; it was not expert opinion, and even if it were, it was not based on facts of record. Appellant's Brief at 34–36 (citing Pa.R.E. 602[4] and ***Collins v. Hand***, 246 A.2d 398, 404 (Pa. 1968)[5]).

In response to these averments, the Commonwealth suggests that Appellant's narration argument as to Sergeant Greathouse is waived. Commonwealth's Brief at 15. Additionally, the Commonwealth claims that Officer Snader and Sergeant Greathouse did not narrate the video; they answered questions about the video. ***Id.*** at 16. Alternatively, the Commonwealth contends that, even if the police witnesses did narrate the

---

[4] Pa.R.E. 602 provides, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."

[5] "An expert cannot base his opinion upon facts which are not warranted by the record. No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture." ***Collins v. Hand***, 246 A.2d 398, 404 (Pa. 1968) (citations omitted).

video, they testified permissibly "to their personal knowledge[,] perceptions and experience." *Id.* at 16, 17 (citing *Commonwealth v. Palmer*, 192 A.3d 85, 101 (Pa. Super. 2018)).

Here, the trial court found that the prosecutor "specifically instructed [Officer] Snader not to narrate the entire video but to use the video as a visual aid to assist the jury in understanding his testimony." Trial Court Opinion, 11/28/18, at 5 (citing N.T., 6/27/18, at 162–163). The trial court further found that:

> [Officer] Snader then played the video and answered specific questions that were asked by the prosecutor in relation to the video. (N.T. at 163–74). During this testimony, [Officer] Snader identified Appellant on the video as the person standing next to the CI. *Id.* at 163–66. [Officer] Snader also described a scene which showed a clear exchange of money between Appellant and the CI, followed by Appellant and the CI moving behind two vehicles, where the CI retrieved something from the ground. *Id.* at 168–69. At no time did the video show the CI having contact with anyone other than Appellant. *Id.* at 168–74.
>
> * * *
>
> Sergeant Greathouse testified he was at LSC headquarters on June 28, 2016, monitoring a camera located in the 300 block of South Queen Street to make sure the CI was in view at all times. (N.T. at 239–40). While playing the video for the jury, [Sergeant] Greathouse identified the CI walking from Strawberry Street, handing . . . Appellant money, going behind a vehicle, then exiting from behind the vehicle with Appellant. *Id.* at 240-42. [Sergeant Greathouse] recognized Appellant on the video because he knew her prior to this incident. *Id.* at 243–44. [Sergeant] Greathouse did not see the CI have contact with anyone other than Appellant. *Id.* at 241. He also did not see anyone other than the CI and Appellant go behind or come out from behind the vehicle. *Id.* at 242.

*Id.* at 6, 7. The trial court rejected Appellant's challenge as follows:

As a preliminary matter, neither [Officer] Snader nor [Sergeant] Greathouse narrated the LSC video. (N.T. at 163–74, 239–44). Rather, they gave specific answers in response to questions asked by the prosecutor about what was being shown on the video. *Id.*[11] Moreover, Appellant did not object to the testimony of [Sergeant] Greathouse on the basis of improper narration. *Id.* at 228–44.[12] Therefore, Appellant has waived this claim as it relates to [Sergeant] Greathouse. *See Commonwealth v. Cole*, 167 A.3d 49, 64 (Pa. Super. 2017) (defendant waived claim where objection at trial made no mention of the specific claim or objection the defendant is raising on appeal).

> [11] Narrate is defined in part as "[t]o supply a running commentary for a performance, as of a film." *See* Webster's II New College Dictionary.
>
> [12] Defense counsel objected on relevance grounds when the Commonwealth offered [Sergeant] Greathouse as an expert in drug interdiction and investigative work, arguing the jury did not need expert testimony to help them understand what they were looking at. (N.T. at 233–36). Counsel also objected because she was not provided notice or an expert report. *Id.* at 236. The trial court sustained counsel's objection and ruled that [Sergeant] Greathouse would only be permitted to testify about what was shown in the video. *Id.* at 236–38. Appellant did not thereafter object to the testimony on the basis of improper narration. *Id.* at 228–44.

Trial Court Opinion, 11/28/18, at 14–15.[6]

---

[6] Alternatively, the trial court opined that:

> [it] properly allowed the witnesses to describe what was being depicted on the LSC video. [Officer] Snader was physically present at the scene of the transaction and [Sergeant] Greathouse was watching the events as they unfolded by camera. Their testimony was based on experience, perceptions, and personal knowledge. Furthermore, the testimony was relevant and helpful

- 13 -

Upon review, we discern no abuse of the trial court's discretion in overruling Appellant's objection to the police officers' testimony about the LSC video. Our review of the record confirms that Appellant objected to Sergeant Greathouse testifying as an expert, but she did not object to his testimony about the video as improper narration. N.T., 6/27/18, at 233–238, 240–245. Our review of the record further confirms that Officer Snader did not narrate the video. Rather, during pauses, "slow frame," and normal motion of the video, Officer Snader answered specific questions about locations, people, and events depicted in the video. *Id.* at 164–170. Officer Snader's testimony was based on his physical presence at the scene—*i.e.*, at one point he was closer to Appellant than the CI, *id.* at 173—as well as his personal knowledge, training, and experience as a member of the Lancaster City Police Selective Enforcement Unit.[7] *Id.* at 101–109, 136–137. Thus, Appellant is not entitled to relief on her final claim.

Appellant's issues lack merit or are waived. Accordingly, we affirm the judgment of sentence.

---

to the jury's understanding of the timing, actors, and location of events as depicted in the video. Therefore, this claim must fail.

Trial Court Opinion, 11/28/18, at 16.

[7] The Selective Enforcement Unit is "a group of five officers and one sergeant, [who] concentrate heavily on quality of life issues for the citizens of Lancaster City with a heavy emphasis on combating street level drug dealing." N.T., 6/27/18, at 100.

- 14 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/14/2019