J-A11033-17

2017 PA Super 232

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JESSE RAY BUSH | : | |
| | : | |
| Appellant | : | No. 1765 MDA 2016 |

Appeal from the Judgment of Sentence September 29, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0007979-2015

BEFORE:  SHOGAN, MOULTON, JJ., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED JULY 19, 2017**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of York County following Appellant Jesse Ray Bush's conviction in a non-jury trial on the charges of possession of drug paraphernalia, driving under the influence of alcohol or a controlled substance ("DUI"), driving under suspension as a habitual offender, and driving under suspension-DUI related.[1]  Appellant's sole claim is that the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. 780-113(a)(32); 75 Pa.C.S.A. §§ 3802(a)(1), 6503.1, and 1543(b)(1.1)(i), respectively.  Appellant was also charged with DUI under 75 Pa.C.S.A. §§ 3802(d)(1)(iii) and (d)(3); however, the Commonwealth *nol prossed* the charges.  Further, Appellant was charged with the summary offenses of driving on roadways laned for traffic, 75 Pa.C.S.A. § 3309(1), and use of multiple-beam road lighting equipment, 75 Pa.C.S.A. § 4306(a); however, the trial court indicated that, in light of its findings of guilt on
*(Footnote Continued Next Page)*

police officer did not have probable cause or reasonable suspicion to stop his vehicle, and therefore, the lower court erred in denying his pre-trial motion to suppress the physical evidence seized by the police. After a careful review, we affirm.

The relevant facts and procedural history are as follows: Appellant was arrested, and on April 11, 2016, he filed a counseled pre-trial motion seeking to suppress the physical evidence seized by the police following the stop of his vehicle. Specifically, Appellant averred the stop of his vehicle was illegal since the police officer had neither probable cause nor reasonable suspicion to initiate the stop.

On June 28, 2016, the matter proceeded to a suppression hearing at which the sole witness was Pennsylvania State Police Trooper Raymond W. Rutter, who testified that he has been a trooper for approximately three years. N.T., 6/28/16, at 4. He indicated that, on November 1, 2015, at approximately 3:15 a.m., he was on duty and traveling in the left-hand lane on I-83 southbound near the Maryland state line when he observed the following:

> [A] SUV, a dark colored SUV, which was traveling northbound, which had passed me, which had its high beams on. While that [SUV] had passed me there was another vehicle—that [SUV] was traveling in the right lane, there was a smaller sedan which was traveling in the left-hand lane, passing that [SUV] that was

*(Footnote Continued)* ─────────────

various charges, it would "not make a finding of guilt" on the summary offenses. N.T., 9/29/16, at 3.

in the right which had its high beams on, and then I spun around just north of the Maryland line, the divider, and approached that [SUV] which I saw [with] its high beams on from the rear.

*Id.* at 6-7.

When asked by the prosecutor how he could "tell that the high beams were on[,]" Trooper Rutter answered that the lights "were bright to me looking at them." *Id.* at 7. Trooper Rutter indicated that his experience as a trooper assisted him in making his determination. *Id.*

Moreover, when the prosecutor asked Trooper Rutter how close he was to the SUV when he first noticed the high beams were activated, Trooper Rutter testified that he was within 300 feet. *Id.* at 8. He further indicated that he "actually pas[sed] [the SUV] going south and they were still activated. So whatever the distance from two lanes over would be on the interstate, plus the center." *Id.*

Trooper Rutter clarified that, when he turned his police vehicle around at the highway divider and proceeded northbound, he did so with the intent of stopping Appellant's SUV "for the violation of the high beams." *Id.* He indicated that, once he caught up to the SUV, he did not immediately stop it, but he continued to follow it as he knew that the welcome center, which would be a safe place to stop the SUV, was "just north of [his] location." *Id.*

As he followed the SUV to the welcome center, Trooper Rutter noticed the vehicle "cross over the fog lines two times[.]" *Id.* at 8-9. Trooper Rutter testified that, at this point, in addition to the high beams traffic

- 3 -

violation, Trooper Rutter suspected that Appellant might be DUI. *Id.* at 10-11. He clarified, however, that even if Appellant's SUV had not crossed the fog lines twice, he still intended to stop the vehicle "for the high beams violation." *Id.* at 11. Trooper Rutter indicated that he stopped Appellant's SUV, and charged Appellant with numerous crimes, including DUI-related charges and the high beams violation. *Id.* at 12.

On cross-examination, Trooper Rutter clarified that, in the area where the incident occurred, between the northbound and southbound lanes on I-83, there was a guardrail at the height of the concrete barriers. *Id.* at 13-14, 16. He confirmed that Appellant was driving in the northbound right-hand lane, and he was traveling in the southbound left-hand lane; the divider between the northbound and southbound lanes was approximately sixty feet in width. *Id.* at 16. Trooper Rutter testified that the highways were straight without curves in this area, so the northbound and southbound vehicles passed each other. *Id.*

Trooper Rutter reiterated that when he first noticed Appellant's SUV traveling northbound it "appeared to [him] that it had the high beams on." *Id.* at 14. He noted that he has "made numerous stops on high beam violations, and [Appellant's SUV] appeared to be [*sic*] high beams on to [him.]" *Id.* at 14-15. Further, Trooper Rutter noted that, based on his training and experience, Appellant's SUV had its high beams on. *Id.* at 15. He testified that Appellant's SUV's lights "affected [his] eyes, they were

bright into [his] eyes, but it didn't make [him] swerve or crash or anything like that." *Id.* He noted that the sedan, which was passing Appellant's SUV, did not have its high beams activated. *Id.* at 16. Trooper Rutter testified that he is "pretty good" about "picking out" which vehicles have their high beams activated. *Id.* at 20. He reiterated that from his "training and experience it appeared to be high beams and that's why [he] initiated the stop [of Appellant's SUV]." *Id.* at 21.

At the conclusion of the hearing, the suppression court denied Appellant's motion to suppress, concluding that Trooper Rutter observed Appellant's SUV with its high beams improperly activated, and thus, he had probable cause to stop Appellant's SUV. *Id.* at 41-42. Subsequently, following a non-jury trial, the trial court convicted Appellant of the offenses indicated *supra* and sentenced him to an aggregate of nine and one-half years to twenty years in prison. This timely appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant contends that the stop of his SUV was illegal since Trooper Rutter did not have the requisite probable cause or reasonable suspicion to initiate a stop. Accordingly, he argues the trial court erred in denying his pre-trial motion to suppress the physical evidence seized as a result of the stop of his SUV.

The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor

- 5 -

Vehicle Code is a question of law, over which our scope of review is plenary and our standard of review is *de novo*. ***Commonwealth v. Chase***, 599 Pa. 80, 960 A.2d 108 (2008). "[A]ppellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." ***Commonwealth v. Stilo***, 138 A.3d 33, 35-36 (Pa.Super. 2016) (citation omitted). Our Supreme Court has declared:

> [The] standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing such a ruling by the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record....Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Eichinger***, 591 Pa. 1, 915 A.2d 1122, 1134 (2007) (internal citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa.Super. 2006) (quotation marks and quotation omitted).

Our analysis of the quantum of cause required for a traffic stop begins with 75 Pa.C.S.A.§ 6308(b), which provides:

> (b) **Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration,

proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (bold in original). "Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose." **Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa.Super. 2010) (*en banc*) (citation omitted). For a stop based on the observed violation of the vehicle code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop. **Feczko**, 10 A.3d at 1291 ("Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation.").

Here, the trial court found that Trooper Rutter credibly testified that he stopped Appellant's vehicle on the basis that Appellant had his high beams activated in violation of 75 Pa.C.S.A. § 4306, use of multiple-beam road lighting equipment. Since an investigation following the traffic stop would have provided Trooper Rutter with no additional information as to whether Appellant violated Section 4306, probable cause was necessary to initiate the stop on this basis. **See Commonwealth v. Slattery**, 139 A.3d 221, 222-23 (Pa.Super. 2016) (holding that where the "vehicular stop is to determine whether there has been compliance with the Commonwealth's vehicle code, it is incumbent upon the officer to articulate....probable cause

J-A11033-17

to believe that the vehicle or the driver was in violation of some provision of the code") (citation omitted)); **Feczko**, **supra**.

Our Supreme Court has defined probable cause as follows:

Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the [stop], and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a *probability,* and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

**Commonwealth v. Martin**, 627 Pa. 623, 101 A.3d 706, 721 (2014) (citation omitted) (emphasis in original). Pennsylvania law makes clear, however, that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense. **Chase**, **supra**.

Here, Trooper Rutter stopped Appellant's SUV for a violation of Section 4306, which provides, in relevant part, the following:

**§ 4306.  Use of multiple-beam road lighting equipment**
**(a) Approaching an oncoming vehicle.-**Whenever the driver of a vehicle approaches an oncoming vehicle within 500 feet, the driver shall use the low beam of light.

75 Pa.C.S.A. § 4306(a) (bold in original).[2]

_____

[2] Section 4306 provides for exceptions related to emergency vehicles and drivers flashing their high beams for purposes of warning oncoming vehicles of danger; however, neither of these exceptions are implicated in the case *sub judice*.  **See** 75 Pa.C.S.A. § 4306(c).

In construing Section 4306(a) to determine its meaning, we are guided by the following legal precepts as set forth by our Supreme Court:

> The purpose of statutory interpretation is to ascertain the General Assembly's intent and give it effect. 1 Pa.C.S.[A.] § 1921(a). In discerning that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *See* 1 Pa.C.S.[A.] § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). "Relatedly, it is well established that resort to the rules of statutory construction is to be made only when there is an ambiguity in the provision." *Oliver v. City of Pittsburgh*, 608 Pa. 386, 11 A.3d 960, 965 (2011) (citations omitted).

*Mohamed v. Com., Dep't of Transp., Bureau of Motor Vehicles*, 615 Pa. 6, 40 A.3d 1186, 1193 (2012). *See Commonwealth v. Irwin*, 769 A.2d 517, 521 (Pa.Super. 2001) (holding when language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and common meaning).

Pursuant to the plain and clear language of Section 4306(a), a driver commits a traffic code violation whenever the driver approaches an oncoming vehicle within 500 feet and does not use the vehicle's low beam lights. In *Irwin*, *supra*, we noted that the term "approaches," as used in Section 4306(a), is defined as "to come nearer in space." *Irwin*, 769 A.2d at 522. Moreover, the dictionary definition of "oncoming" is "coming nearer in time or space." Webster's Collegiate Dictionary 811 (10th ed. 1997).

- 9 -

In the case *sub judice*, the trial court found that Trooper Rutter credibly testified that, as he was driving in the southbound left-hand lane of I-83, Appellant, who was driving his SUV in the northbound right-hand lane of I-83, drove by Trooper Rutter with his SUV's high beams activated. N.T., 4/12/16, at 41. The trooper testified that Appellant's SUV was within 300 feet of his cruiser. *Id.* at 8. He further testified that he had a clear view of Appellant's SUV's lights; Appellant's SUV's lights were noticeably brighter than the lights of the sedan, which passed Appellant's SUV; and Appellant's SUV's lights affected the trooper's eyes. *Id.* at 15-16. Trooper Rutter testified that he has made numerous stops based on high beam violations, and based on his training and experience, he concluded Appellant did not properly dim his lights when he passed by the trooper's cruiser. *Id.* at 14, 21.

Based on the aforementioned, we conclude the trial court properly determined that Trooper Rutter had probable cause to stop Appellant's SUV for a violation of Section 4306(a). Simply put, Appellant's SUV approached (came closer to) Trooper Rutter's police cruiser as the cruiser was oncoming (coming near to Appellant's vehicle) within 500 feet, and Appellant did not use the low beam of light.[3]

_____

[3] Appellant specifically avers Trooper Rutter did not offer sufficient credible testimony to establish probable cause to believe that Appellant, in fact, had his SUV's high beams activated when he drove by the trooper's cruiser. *See*
*(Footnote Continued Next Page)*

We find unavailing Appellant's specific argument that he was not required to dim his lights as his SUV did not approach an oncoming vehicle as required for a violation of Section 4306(a). In this regard, Appellant reasons that, since a guardrail and concrete barrier divided I-83's southbound lane in which Trooper Rutter was driving from the northbound lane in which Appellant was driving, the SUV was not "approaching" and the trooper's cruiser was not "oncoming" for purposes of the statute.

As fully discussed *supra*, giving the statute's express terms their plain meaning, we disagree with Appellant's argument. While the guardrail and concrete barrier should be taken into consideration in determining whether Appellant's SUV approached within 500 feet of Trooper Rutter's oncoming police cruiser, the existence of such does not alter or negate the plain language of the statue. Moreover, while the Legislature listed exceptions to the use of high beams in Section 4306(c), it did not include a blanket

*(Footnote Continued)* ————————

Appellant's Brief at 15-17. In this regard, he notes that vehicle lights have varying degrees of brightness, and Trooper Rutter allegedly offered contradictory reasons as to why he stopped Appellant's vehicle. **See id.** As indicated *supra*, the suppression court found Trooper Rutter's testimony regarding Appellant's use of high beams to be credible. We are bound by the suppression court's credibility determination and factual findings, which are supported by the record. **See Eichinger**, **supra**; **Gallagher**, **supra**.

exception related to the use of high beams on a divided highway[4] as was present in this case.

Further, we find unavailing Appellant's reliance upon **Commonwealth v. Beachey**, 556 Pa. 345, 728 A.2d 912 (199), in support of his argument that he did not violate Section 4306(a). In **Beachey**, the appellant, who was driving during the daylight hours of an overcast summer day, flashed his high beams ten or more times to warn oncoming motorists of the presence of a police radar unit. **Id.** at 347, 728 A.2d at 912. An officer stopped the appellant's vehicle and cited him with violating Section 4306(a). This Court affirmed the appellant's judgment of sentence.

In reversing and finding no violation of the high beams statute occurred, our Supreme Court reasoned that "[a]lthough [Section 4306(a)] does not specify its scope of application, reason requires that it be read in connection with statutory language that sets forth the circumstances when motorist are required to use their headlights." **Id.** at 347, 728 A.2d at 913 (citing 1 Pa.C.S.[A.] § 1932 (statutes in *pari materia* are to be construed together)). Accordingly, our Supreme Court examined 75 Pa.C.S.A. § 4302, which requires motorists to use lighted head lamps between sunset and

---

[4] The Motor Vehicle Code defines "divided highway" as "[a] highway divided into two or more roadways and so constructed as to impede vehicular traffic between the roadways by providing an intervening space, physical barrier or clearly indicated dividing section." 75 Pa.C.S.A. § 102.

sunrise, as well as when there is insufficient light due to "unfavorable atmospheric conditions[.]"[5]  Based thereon, our Supreme Court held:

> [S]ection 4302 sets forth the times when headlights must be used, and [S]ection 4306(a) limits the use of high beams during those times.  If the two provisions were not read together, application of [S]ection 4306(a) would not be limited to the times specified in [S]ection 4302 and an absurd result would follow. Specifically, [S]ection 4306(a)'s requirement that motorists use their low beams whenever approaching another vehicle within 500 feet would be applicable during the daytime. Hence, a motorist would be in violation if, during daylight hours, he failed to turn on his low beam headlights every time a vehicle approached within 500 feet. In interpreting statutes, it is axiomatic that the legislature did not intend an absurd or unreasonable result. ***See*** 1 Pa.C.S.[A.] § 1922(a) (presumptions in ascertaining legislative intent).

***Beachey***, 556 Pa. at 348, 728 A.2d at 913.

In the case *sub judice*, Appellant does not dispute that his high beams violation occurred during the nighttime hours between sunset and sunrise.

_____

[5] Section 4302 relevantly provides:
**§ 4302. Periods for requiring lighted lamps**
**(a) General rule.**-The operator of a vehicle upon a highway shall display the lighted head lamps and other lamps and illuminating devices required under this chapter for different classes of vehicles, subject to exceptions with respect to parked vehicles, at the following times:
(1) Between sunset and sunrise.
(2) Any time when, due to insufficient light or unfavorable atmospheric conditions, including rain, snow, sleet, hail, fog, smoke or smog, persons and vehicles on the highway are not clearly discernible to the operator for a distance of 1,000 feet ahead.
75 Pa.C.S.A. § 4302(a) (bold in original).

Accordingly, Appellant was required to use his headlights pursuant to 4302, and we conclude **Beachey** is distinguishable.

This does not end our inquiry, however, as Appellant suggests that **Beachey's** holding that Section 4306(a) must be read together with other statutes so as to avoid an absurd result requires the courts to construe Section 4306(a) in conjunction with 75 Pa.C.S.A. § 3345, pertaining to a driver's duty in meeting or overtaking a school bus.

In this regard, Appellant notes that Section 3345(a) requires "the driver of a vehicle meeting or overtaking any school bus stopped on a highway...[to] stop at least ten feet before reaching the school bus when the red signal lights...are flashing and the side stop signal arms are activated[.]" 75 Pa.C.S.A. § 3345(a). Further, he notes the school bus statute provides an exception from the stopping requirement, indicating "[t]he driver of a vehicle upon a highway...with separate roadways need not stop upon meeting or passing a school bus with actuated red signal lights which is on a different roadway." 75 Pa.C.S.A. § 3345(g).

Appellant reasons that Section 4306(a) must be read in connection with Section 3345(g) so as to avoid an absurd result in the case *sub judice*. In essence, he argues that if drivers are not required to stop for a school bus on a highway with separate roadways then it would be absurd to require drivers to use their low beams when approaching an oncoming car on a divided highway. We disagree.

Statues *in para materia* are those relating to the same matter. ***In re Trust Under Deed of Kulig***, 131 A.3d 494, 497 (Pa.Super. 2015); Black's Law Dictionary 807 (10th ed. 2004). While we agree with Appellant that, if possible, statutes *in para materia* should be construed together, we disagree with Appellant that Sections 4306(a) and 3345(g) are *in para materia*. The statutes do not relate to the same matter and do not have a common purpose. Whereas Section 4306 relates to drivers' use of high beam headlights, Section 3345 relates to drivers approaching school buses that are transporting students. The statutes are fundamentally different and, thus, ***Beachey's*** recognition of the *in pari materia* principle does not require that the highway with separate roadways exception contained in the school bus statute be applied to the high beam statute as well.

Finally, we find unavailing Appellant's argument that the legislative intent of Section 4306(a), as recognized in ***Beachey***, does not support the finding of a violation of Section 4306(a) in the case *sub judice*. In ***Beachey*** our Supreme Court opined that the language of Section 4306(a) unambiguously and clearly sets forth the legislative intent of the statute, and further, that such intent did not support a violation of the statute when drivers use their high beams during normal, daytime driving. Specifically, in ***Beachy***, our Supreme Court held as follows:

> The plain legislative intent of [S]ection 4306(a) was to prevent motorists from facing excessive glare, so as to reduce the obvious safety hazard that exists when a driver suffers momentary blindness upon being subjected even very briefly to

the intense brightness of high beam lamps. However, it is inconceivable that the [L]egislature was concerned about the midday use of high beams during periods when normal atmospheric and lighting conditions make it impossible for drivers to be blinded by headlight glare. We conclude, therefore, that [S]ection 4306(a) was never intended to apply to the midday use of one's headlights. [The] [a]ppellant's conviction for the daytime use of his high beams cannot, therefore, be sustained.

***Beachey***, 556 Pa. at 348, 728 A.2d at 913.

Here, unlike in ***Beachey***, the safety hazard that Section 4306(a)'s plain language seeks to prevent was present. The trial court found that Trooper Rutter credibly testified that the guardrail and concrete barrier did not prevent Appellant's SUV's high beams from shining into his eyes. In fact, Trooper Rutter specifically testified that Appellant's SUV's lights "affected [his] eyes, they were bright into [his] eyes[.]" N.T., 6/28/ 16, at 15. Thus, the excessive glare which Section 4306 seeks to prevent so as to reduce the hazard that exists when a driver is momentarily blinded by the brief, intense brightness of high beam lamps existed in this case, despite the existence of the guardrail and concrete barrier between the northbound and southbound lanes of I-83. Accordingly, we find no merit to Appellant's final claim.

For all of the aforementioned reasons, we conclude that the facts of this case[6] presented probable cause of violation of Section 4306(a) for purposes of the traffic stop of Appellant's SUV. Further, Trooper Rutter offered specific and articulable facts that provided probable cause that Appellant violated the section. Accordingly, as the traffic stop was not illegal, the trial court did not err in denying Appellant's pre-trial suppression motion. Accordingly, we affirm Appellant's judgment of sentence.

Affirmed.

Judge Moulton joins the Opinion.

Judge Shogan files a Concurring Opinion to which P.J.E Stevens joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2017

---

[6] We recognize that "divided highways" in Pennsylvania exist with numerous variations, including the dividing of roadways by intervening space with trees and large physical barriers. We save for another day the issue of whether Section 4306(a) may be violated in other factual scenarios not present in this case.