**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MELVIN KING | : | |
| | : | |
| Appellant | : | No. 2275 EDA 2021 |

Appeal from the Judgment of Sentence Entered February 14, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003697-2018

BEFORE: DUBOW, J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED AUGUST 8, 2023**

Appellant, Melvin King, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial conviction for persons not to possess firearms.[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. On April 29, 2018, Officers Anthony Agudo and Ryan Redmond responded to a radio call of gunshots near the 3200 block of Shelbourne Street. The officers arrived at the scene and did not find any suspects, but they recovered fired cartridge casings. Analysis of this evidence led police to believe that at least three (3) different firearms were used in the shooting. Nevertheless, the officers did not recover any firearms from the scene.

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

The officers discovered security cameras at a property on the block. Officer Agudo reviewed the surveillance footage, which depicted two black males wearing red and black clothing. The two men walked towards another black male, later identified as Appellant, who was wearing a dark jacket and distinctive blue track pants. The two men drew firearms and fired at Appellant. While facing the shooters, Appellant kept his left hand inside his jacket pocket and raised his arm. Smoke appeared to come from the pocket, signaling to Officer Agudo that Appellant returned fire.

Around this time, the officers received a call that a gunshot victim had arrived at Temple Hospital. A blue Toyota Matrix dropped off the victim and remained parked in front of the hospital. Officer Agudo called another officer, who was already at the hospital, and asked him to describe the clothing of the gunshot victim. The officer's description of the gunshot victim matched the appearance of Appellant from the surveillance footage. Subsequent testing also revealed the presence of gunshot residue on Appellant's hands.

Officers Agudo and Redmond went to the hospital and found Appellant in the emergency department. Detective James Gruninger, the lead investigator on the case, arrived at the hospital shortly thereafter. After checking Appellant's identifying information against police records, the detective learned there was an active warrant for Appellant's arrest. Detective Johnson then recovered Appellant's belongings and put them on a property receipt.

Detective Mark Johnson assisted Detective Gruninger with this investigation by preparing an application for a warrant to search the vehicle that transported Appellant to the hospital. While police waited for the warrant, Officer Kyle Elwood secured the vehicle. Once police obtained the warrant, they towed the vehicle to a secure lot. Detective Johnson and other officers then searched the vehicle and photographed its contents. Significantly, the vehicle contained a black, puffy jacket and a blue and white track jacket. The black jacket had a hole in the left pocket. Police also recovered blood from one of the floor mats.

Based upon this evidence, police arrested Appellant for his role in the shootout. On August 5, 2019, Appellant filed a suppression motion. In it, Appellant argued that police conducted illegal, warrantless searches of his vehicle and hospital room. Appellant also claimed that police lied about discovering his jackets during the search pursuant to the warrant. The court conducted a suppression hearing on November 4, 2019. Following the hearing, the court denied the suppression motion.

A jury trial commenced on November 13, 2019. At that time, Appellant stipulated that he was not allowed to possess a firearm based upon a previous conviction. (*See* N.T. Trial, 11/14/19, at 162-63). At the conclusion of trial, the jury convicted Appellant of persons not to possess firearms. On February 14, 2020, the court sentenced Appellant to six (6) to twelve (12) years' imprisonment. Appellant timely filed a post-sentence motion on February 18,

2020, arguing that the conviction was against the weight of the evidence. The motion did not include any challenges to the sentence. On February 25, 2020, the court denied the post-sentence motion.

The trial court opinion sets forth the remaining procedural history as follows:

> On March 6, 2020, Appellant filed a timely appeal with the Superior Court of Pennsylvania from [a different] judgment of sentence imposed following the revocation of Appellant's probation on docket number CP-51-CR-008683-2014. On March 17, 2020, the Superior Court of Pennsylvania docketed Appellant's violation of probation appeal at 866 EDA 2020. [The trial c]ourt later issued a [Pa.R.A.P.] 1925(a) opinion on November 2, 2021, in which it addressed appellate issues relating to Appellant's violation of probation appeal.
>
> On April 2, 2020, Appellant filed a separate notice of appeal from the judgment of sentence imposed following his [firearms] conviction. On this notice of appeal, Appellant's counsel erroneously included the incorrect Common Pleas docket number, mistakenly listing docket number CP-51-CR-0008683-2014, which was associated with Appellant's violation of probation case. Counsel should have instead listed docket number CP-51-CR-0003697-2018, which was associated with the instant matter…. On May 8, 2020, the Superior Court of Pennsylvania docketed the notice of appeal containing the incorrect docket number at 1062 EDA 2020.
>
> On November 22, 2020, [prior counsel] filed an application to withdraw as counsel from Appellant's cases. The Superior Court of Pennsylvania granted this application on December 15, 2020, and ordered [the trial c]ourt to appoint substitute counsel for Appellant. On December 23, 2020, [the trial c]ourt appointed [current counsel] to represent Appellant on his appellate matters. On August 16, 2021, the Superior Court of Pennsylvania issued a Rule to Show Cause as to why the appeal docketed at 1062 EDA 2020 should not be dismissed as duplicative of the appeal docketed at 866 EDA

- 4 -

2020. Although Appellant filed a response, the Superior Court dismissed the appeal docketed at 1062 EDA 2020 *sua sponte* as duplicative.

On September 4, 2021, Appellant filed a motion with [the trial c]ourt to reinstate his direct appeal rights *nunc pro tunc* for his [firearms] conviction at docket number CP-51-CR-0003697-2018. Appellant subsequently filed both a new notice of appeal and a [Pa.R.A.P.] 1925(b) Statement of Matters Complained of on Appeal with [the trial c]ourt on September [9], 2021. The Superior Court of Pennsylvania docketed this new appeal at 1829 EDA 2021 on September 20, 2021. On October 5, 2021, the Superior Court of Pennsylvania issued a Rule to Show Cause as to why the appeal should not be dismissed as untimely filed. On October 28, 2021, due to Appellant's failure to file a response, the Superior Court of Pennsylvania quashed the appeal docketed at 1829 EDA 2021 as untimely.

On September 29, 2021, Appellant separately filed a [Post Conviction Relief Act] petition … seeking reinstatement of his direct appeal rights *nunc pro tunc* for his [firearms conviction]. On November 4, 2021, [the c]ourt granted Appellant's PCRA petition and reinstated Appellant's appellate rights *nunc pro tunc*.

(Trial Court Opinion, filed 4/14/22, at 15-17). On November 7, 2021, Appellant timely filed a *nunc pro tunc* notice of appeal. That same day, Appellant filed a voluntary Rule 1925(b) statement.

On appeal, Appellant raises the following issues for our review:

Whether the evidence presented at trial was sufficient to establish each and every element of the crime of Violation of the Uniform Firearms Act, Section 6105.

Whether the jury verdict was against the weight of the evidence.

Whether the trial court erred by denying Appellant's pretrial motion to suppress physical evidence.

Whether the introduction of fabricated evidence and perjured testimony violated Appellant's Due Process rights and constituted prosecutorial misconduct.

Whether the sentencing court abused its discretion by imposing a sentence that was not based upon the gravity of the violation, the extent of Appellant's record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa.C.S. [§] 9721 of the Sentencing Code.

(Appellant's Brief at 8).

In his first and second issues, Appellant argues that the Commonwealth did not prove that Appellant possessed a firearm. Appellant claims that the police witnesses merely speculated that Appellant possessed a firearm based on what they observed in the surveillance video. Although the officers testified that smoke emanated from Appellant's jacket pocket, Appellant complains that the images on the surveillance video were "grainy." (*Id.* at 18). Rather than smoke, Appellant contends that the officers observed "the bullet entering Appellant's body and the resultant excretion of clothing fiber or bodily fluid." (*Id.*) Appellant acknowledges the Commonwealth's evidence regarding gunshot residue, but he avers that this evidence is not persuasive. Appellant emphasizes the Commonwealth's expert's testimony that "gunshot residue can follow a bullet for thirty feet," and Appellant maintains that the residue on his hands must have resulted from the bullets fired by his attackers. (*Id.* at 17).

Appellant also argues that the police witnesses provided contradictory testimony. Specifically, Appellant contends that Detective Johnson testified

- 6 -

that Appellant's jacket "was ripped on the right pocket," but Officer Agudo testified that Appellant "fired a gun through his left jacket pocket." (*Id.*) Further, Appellant criticizes the testimony from the Commonwealth's ballistics expert, claiming it did not demonstrate that three different firearms were used during the shootout. Appellant concludes that the Commonwealth presented insufficient evidence to support his conviction, and the conviction was against the weight of the evidence. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019)

(quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super.

2013)).

Additionally,

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408

(2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)

(most internal citations omitted).

The Uniform Firearms Act provides, in relevant part, as follows:

> **§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**
>
> **(a) Offense defined.—**
>
> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control,

- 8 -

> sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession…." ***Commonwealth v. Jones***, 874 A.2d 108, 121 (Pa.Super. 2005) (quoting ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa.Super. 1996)). "Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control." ***Id.*** "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." ***Id.***

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

***Commonwealth v. Parrish***, 191 A.3d 31, 36-37 (Pa.Super. 2018), *appeal denied,* 651 Pa. 10, 202 A.3d 42 (2019) (internal citations and quotation marks omitted).

Instantly, Appellant stipulated that he is prohibited from possessing a firearm due to a prior conviction for possession of a controlled substance with intent to deliver. (***See*** N.T. Trial, 11/14/19, at 162-63). Regarding Appellant's constructive possession of the firearm, the trial court elaborated on this issue as follows:

> As Philadelphia Police Officer Mark Wilusz testified to, no firearm was ever recovered from the 3200 block of

- 9 -

Shelbourne Street in Philadelphia, where a gunfight involving three individuals occurred on April 29, 2018. Philadelphia Police Detective James Gruninger testified, however, that he recovered other physical evidence, including multiple fired cartridge casings and bullets. Officer Wilusz examined the casings and concluded they originated from two different types of firearms. He also determined that one of the bullets recovered from the scene must have originated from a third firearm.

On the night of April 29, 2018, Philadelphia Police Officer Anthony Agudo responded to the area of the gunfight and reviewed video footage which depicted it. The footage showed two black male individuals firing gunshots in the direction of a third black male individual, who was wearing a dark colored jacket and blue track pants with a white stripe down the side. The footage also showed the third individual raising his left arm inside his jacket pocket with smoke then coming out of the pocket. Officer Agudo testified that this indicated to him that the third individual was shooting back at the other two individuals. Video footage taken from a different angle also showed the third individual falling next to the bumper of a blue vehicle after possibly being shot.

\* \* \*

Detective Gruninger also responded to Temple University Hospital, where he observed the clothing located near Appellant. Believing it to be consistent with the third individual in the video footage, Detective Gruninger had Appellant's hands tested for gunshot residue. Philadelphia Police Officer Tiffany Richardson testified that she conducted an SEM test for gunshot residue on both of Appellant's hands, per Detective Gruninger's request. Hung Le, a forensic science and gunshot residue testing expert, testified that he tested the evidence recovered from Appellant's hands and found substances consistent with gunshot residue on both samples collected from Appellant's hands.

The Commonwealth and counsel for Appellant also stipulated that Appellant was driven to Temple University Hospital by his girlfriend in a blue Toyota Matrix.

- 10 -

> Philadelphia Police Detective Mark Johnson testified that he prepared a search warrant for this vehicle. After the warrant was executed, two jackets were recovered from the vehicle, including a blue-and-white jacket. Detective Johnson testified that the right pocket of this jacket was ripped. Detective Gruninger also testified that he observed a hole in the jacket with stuffing sticking out of it, which he opined was likely caused by a bullet.
>
> \* \* \*
>
> Based on the totality of the circumstances, the circumstantial evidence offered at trial established that Appellant constructively possessed and used a firearm while he was ineligible to do so under the Uniform Firearms Act.

(Trial Court Opinion at 19-21) (internal record citations omitted). We accept this analysis.

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, the record supports the inference that Appellant constructively possessed a firearm. **See Sebolka, supra**. Further, the court concluded that the guilty verdict was not shocking. (**See** Trial Court Opinion at 23). On this record, we cannot say that the court palpably abused its discretion in ruling on the weight claim. **See Champney, supra**. Therefore, Appellant is not entitled to relief on his sufficiency and weight claims.

In his third issue, Appellant baldly asserts that the police illegally removed his jacket from the vehicle parked outside the hospital before obtaining a search warrant. In support of this claim, Appellant cites various portions of the **trial** transcripts to demonstrate that the detectives lied about "the actual circumstances surrounding the search of Appellant's vehicle."

- 11 -

(Appellant's Brief at 20). Appellant argues:

> Detective Gruninger initially testified that he recovered Appellant's jacket at the hospital along with Appellant's other clothes. N.T. 11/13/19 p. 63-65. Detective Gruninger then changed his testimony and stated that the jacket was recovered from Appellant's vehicle pursuant to execution of a search warrant. **Id.** at 63.[2]

(**Id.**)

Appellant insists that this "inconsistent testimony … exposes the duplicity of the information presented to the court at the [hearing on the] motion to suppress, as well as to the jury at trial." (**Id.**) Relying on this testimony, Appellant speculates "that upon seeing the jacket in the vehicle upon arrival at the hospital, Detective Gruninger removed the jacket and brought it into the hospital to confront Appellant." (**Id.** at 21). Appellant maintains that the purported warrantless vehicle search violated his constitutional rights, and no exception to the warrant requirement justified the warrantless search. Appellant concludes that "the search is unlawful and

_____

[2] We have reviewed the record and note that Appellant's citations to the trial transcripts are incorrect. Although Appellant cites to the November 13, 2019 trial transcript, Detective Gruninger did not testify until November 14, 2019. Setting aside this error, it appears that Appellant is relying on a portion of the cross-examination of Detective Gruninger. Specifically, defense counsel asked whether police recovered "the puffy jacket" from Appellant's vehicle, and Detective Gruninger confirmed that they did. (**See** N.T. Trial, 11/14/19, at 64). Immediately thereafter, defense counsel stated, "And you said at the preliminary hearing you got the puffy jacket from the hospital room; right?" (**Id.**) Detective Gruninger agreed. (**Id.**) Defense counsel continued, "You never said anything about clothing obtained from the car when you were at the preliminary hearing; is that right?" (**Id.**) Again, Detective Gruninger responded affirmatively. (**Id.**)

the evidence recovered should have been suppressed." (***Id.*** at 23). We disagree.

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Ford***, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018). "[A]ppellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pretrial motion to suppress." ***Commonwealth v. Koonce***, 190 A.3d 1204, 1212 (quoting ***Commonwealth v. Bush***, 166 A.3d 1278, 1281-82 (Pa.Super. 2017)). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony." ***Id.*** (quoting ***Bush, supra*** at 1282).

Regarding searches conducted by police,

> [b]oth the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy. If a person has a reasonable expectation of privacy in a place, then these constitutional provisions generally require police to obtain a warrant to search the place; a search warrant must be supported by probable cause and issued by a neutral, detached magistrate. Warrantless searches are presumptively unreasonable under the state and federal constitutions.

*Commonwealth v. Barr*, ___ Pa. ___, ___, 266 A.3d 25, 39-40 (2021) (internal citations, footnote, and quotation marks omitted).

Instantly, Detective Johnson testified at the suppression hearing regarding the application for a warrant to search the Toyota Matrix that transported Appellant to the hospital.[3] Detective Johnson explained that Appellant

---

[3] We note that the vehicle at issue here was registered to someone other than Appellant. Nevertheless, the Commonwealth did not argue that Appellant lacked a privacy interest in the vehicle. Rather, the Commonwealth's only argument at the suppression hearing was that the police conducted a valid search pursuant to a warrant. Under these circumstances, the Commonwealth effectively conceded the privacy interest, and we will not consider whether Appellant had a reasonable expectation of privacy in the vehicle searched. *See Commonwealth v. Enimpah*, 630 Pa. 357, 368-69, 106 A.3d 695, 701 (2014) (stating it is Commonwealth's burden to present evidence that defendant's constitutional rights were not infringed; Commonwealth may concede privacy interest, choosing to contest only legality of police conduct; if it does so, defendant's "reasonable expectation of privacy" need not be established); *Commonwealth v. Peak*, 230 A.3d 1220, 1224 (Pa.Super. 2020), *cert. denied*, ___ U.S. ___, 141 S.Ct. 1426, 209 L.Ed.2d 150 (2021) *(Footnote Continued Next Page)*

> was brought into Temple Hospital by that vehicle. And it was in front of the ER doors, and it was secured almost immediately by the officers until we had it towed to … where I could execute the search warrant.

(N.T. Suppression Hearing, 11/4/19, at 11). Detective Johnson testified that no one entered the vehicle until police obtained a search warrant. (*See id.* at 11-12).

Once he obtained the warrant, Detective Johnson searched the vehicle with other officers. Regarding the items recovered from the vehicle, Detective Johnson identified a "black puffy coat, which has a blown-out left pocket" that was found in the back seat. (*Id.* at 14). Detective Johnson also identified a "blue-and-white track jacket" that was recovered from inside the vehicle. (*Id.*)

Thereafter, Detective Gruninger provided details about other articles of Appellant's clothing that police recovered from inside the hospital. Detective Gruninger testified:

> These are clothing that were recovered. There is a pair of blue track pants with a white stripe down the side, a hoodie—or a sweat jacket that's blue and white, a pair of black thermal pants, a white T-shirt, and also a pair of sneakers.

―――――――――――――――――――――

(stating Commonwealth did not make argument regarding Appellant's reasonable expectation of privacy in vehicle during suppression hearing; for that reason, trial court did not address Appellant's expectation of privacy, or lack thereof, in its opinion, and this Court could consider issue waived on appeal).

(*Id.* at 31). Nevertheless, Detective Gruninger changed his testimony on cross-examination. At that time, defense counsel revisited the articles of clothing recovered from the hospital. Regarding the jacket, Detective Gruninger added:

> I thought about it after the DA asked the question earlier. If we could go back and ask the question. The blue-and-white sweat jacket was actually recovered with the jacket in the vehicle.

(*Id.* at 36).

In evaluating this testimony, the suppression court determined that the record did not support Appellant's claim that the police conducted a warrantless search of the vehicle. (*See* Trial Court Opinion at 29). This factual finding is supported by the record, and we are bound by it. *See Ford, supra*. Here, the suppression court was free to credit Detective Johnson's testimony regarding the search pursuant to a warrant. Although Detective Gruninger subsequently provided conflicting statements limited to the recovery of the blue-and-white jacket, it was within the court's province as factfinder to credit the detective's assertion that he misspoke. *See Koonce, supra*. To the extent Appellant relies on Detective Gruninger's subsequent trial testimony to support his argument, we emphasize that this Court is limited to reviewing only the evidence presented at the suppression hearing. *See id.* Under these circumstances, we cannot fault the court for denying the suppression motion. *See Ford, supra*. Accordingly, Appellant is not entitled to relief on his third issue.

In his fourth issue, Appellant argues that the Commonwealth committed misconduct through "the presentation of knowingly false testimony and fabricated evidence." (Appellant's Brief at 23). First, Appellant contends that the Commonwealth improperly utilized Detectives Gruninger and Johnson's purportedly fabricated statements about the seizure of Appellant's jacket. Next, Appellant claims that Officer Agudo's testimony that he saw a gunshot come from Appellant's left pocket was "proven demonstrably false." (*Id.* at 24). Further, Appellant complains that the prosecution introduced "unsupported" ballistics evidence. (*Id.*) Appellant, however, failed to raise any objection to this evidence at trial. (*See* N.T. Trial, 11/13/19, at 23-102; N.T. Trial, 11/14/19, at 33-103). Thus, this issue is waived.[4] *See Commonwealth v. Sasse*, 921 A.2d 1229, 1238 (Pa.Super. 2007), *appeal denied*, 595 Pa. 706, 938 A.2d 1052 (2007) (reiterating, "In order to preserve a claim of prosecutorial misconduct for appeal, a defendant must make an objection and move for a mistrial").

In his final issue, Appellant argues that the court imposed an unreasonably excessive sentence without considering all relevant factors enumerated in the Sentencing Code, such as Appellant's characteristics, his rehabilitative needs, and the gravity of the offense. As presented, Appellant's challenge implicates the discretionary aspects of sentencing. *See*

---

[4] The trial court also found this issue waived, albeit due to the lack of detail in Appellant's Rule 1925(b) statement. (*See* Trial Court Opinion at 27).

***Commonwealth v. Ahmad***, 961 A.2d 884, 886 (Pa.Super. 2008) (explaining, "A challenge to an alleged excessive sentence is a challenge to the discretionary aspects of a sentence").

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." ***Commonwealth v. Phillips***, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). "[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1042 (Pa.Super. 2013) (*en banc*).

Instantly, Appellant did not raise his claims at the sentencing hearing or in his post-sentence motion. Thus, Appellant's final issue is waived. ***See id.***

Nevertheless, Appellant would not be entitled to relief even if he preserved his claims.

"When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* "Where [PSI] reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa.Super. 2020) (quoting *Commonwealth v. Devers*, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988)).

Instantly, Appellant addressed the court at the sentencing hearing. Appellant took responsibility for possessing the firearm and stated that he fired "two warning shots" only after the unidentified assailants fired at him. (*See* N.T. Sentencing Hearing, 2/14/20, at 14). Despite Appellant's statement, the court imposed a sentence of six to twelve years' imprisonment, emphasizing:

> I have considered the [PSI report], the mental health report, the submissions by the Commonwealth and defense, prior record score report, sentencing guidelines, purposes of the sentencing code.
>
> [Appellant], there are several issues here. One is that

basically you've been dealing drugs, it looks like consistently, since 1998 as an adult. Before that, as a juvenile since 1994. It's been like a business it looks like. In and out of juvenile facilities. As an adult, you have 19 arrests, 15 convictions, 20 commitments. In the county prison, state prison, violations, but it's all for drug dealing.

\* \* \*

I don't think you ever stopped drug dealing from what I can tell because the most recent arrest for drug dealing was January 20th of 2018 and that was when [another jurist] imposed a sentence of 9 to 23 months of incarceration. This incident then happened, it looks like, on April 29th of 2018, which I think was an incident that happened just five months after the January arrest. I don't know what's going on, but people tell me drugs is not a violent crime, it's a nonviolent crime. It's not. It leads to shootings. I don't know why people are shooting at you and you were shooting at people, but, considering everything else in this case, I don't think that the guidelines of 72 to 90 in terms of the—should be eight or nine years, but there is a major problem. You've been dealing drugs most of your life. I don't know what else to say. A shooting on the street like this, I saw the video, as did the jury many times. I think you should get all the necessary medical treatment. That has nothing to do with where you're at in terms of—and I will send an email to the state prison people detailing the medical condition,[5] the medications you're taking and other things, and ma[k]e sure that they have that. You need to make sure that they have that also to follow up on.

What I am going to do is as follows: On the 6105 charge, I am going to sentence you to a sentence of 6 to 12 years in the state prison which is in the guidelines. It's the lowest end of the guidelines.

(*Id.* at 14-16).

_____

[5] Earlier in the hearing, Appellant explained that he suffered from "non-ischemic cardiomyopathy," and he received a pacemaker for this condition. (N.T. Sentencing Hearing at 13).

- 20 -

In its Rule 1925(a) opinion, the court elaborated on the reasons for Appellant's sentence:

> [The c]ourt followed the fundamental norms of the sentencing process and appropriately sentenced Appellant following his VUFA conviction. Prior to sentencing Appellant, [the c]ourt reviewed Appellant's [PSI] Report, his Mental Health Evaluation, the Commonwealth's sentencing memorandum, submissions from Appellant's family, Appellant's prior record score, the Sentencing Guidelines Form required by the Pennsylvania Commission on Sentencing, and finally, the stated purposes of the Sentencing Code. The record therefore reflects [the c]ourt's careful consideration of the facts of Appellant's crime and character. [The c]ourt expressed concerns about Appellant's extensive prior record, noting that Appellant had previously been arrested nineteen times, convicted fifteen times, violated probation or parole nineteen times, and committed to prison twenty times, including for violations of probation or parole.
>
> [The c]ourt additionally considered the facts and circumstances of VUFA offense by observing the danger of how drug dealing can and often does lead to gun violence, as occurred in Appellant's conviction. Finally, [the c]ourt stated the need for Appellant to receive proper medical care in accordance with his health conditions.

(Trial Court Opinion at 25-26).

Here, the record makes clear that the court adequately considered Appellant's prior record, the sentencing guidelines, the circumstances surrounding the firearms conviction, as well as the PSI report. The sentencing court described its concern for the escalation of Appellant's drug dealing to gun violence. Further, the presence of a PSI report allows us to presume that the court was aware of Appellant's character and mitigating factors, and the court's discretion while using a PSI report should not be disturbed. ***See***

***Watson, supra***.  On this record, Appellant is not entitled to relief on his final claim.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/8/2023</u>